Caroline K. Simon, J.
Claimants, doing business as Raymond & Louis Contracting Co., sue to recover damages for breach of a highway contract, FASS 58-22, entered into with defendant an January 8, 1959 for the relocation and resurfacing with *278 bituminous double-surface treatment of 2.24 miles of the McLean-Cortland County Roads Nos. 105 and 120, situated in Tompkins and Cortland Counties. The original completion date of the contract was October 15,1959. The contract was accepted on September 28, 1960 and a final estimate was forwarded to claimants by defendant on November 22, 1960.
The gravamen of claimants’ case rests on their allegation that the delay of almost one year between the original completion date and the date of final acceptance of the contract was caused by the failure of the defendant to provide claimants with an unobstructed worksite in sufficient time so as to enable claimants to fully perform the contract within the time originally specified. The alleged obstruction consisted of the existence of some 40 utility poles which rested on the highway right of way, the removal of which poles was to be arranged for by the defendant and for which removal claimants were not responsible under the contract. Claimants contend that the defendant permitted an unreasonable period of time to elapse prior to effecting the removal of the last of the poles; and that the existence of these poles in the right of way from June 4, 1959 to August 10, 1959 made it impossible for claimants to utilize their equipment and work force efficiently so that they were required to halt further work in 1959 and to redo in 1960 much work previously done.
At the commencement of the trial defendant introduced into evidence an assignment of all moneys due or to become due under the contract entered into by claimants with the Glens Falls Insurance Company on June 20, 1960, which assignment was filed with defendant on June 24, 1960, together with photostatic copies of a check cashed by the assignee, which purported to be a “ final payment ” so that the standard release clause contained in the public works specifications made part of the contract became operative to bar recovery by claimants. Defendant thereupon moved to dismiss the claim, urging that the acceptance of the final payment check by Glens Falls as assignee precluded any recovery by claimants because of the afore-mentioned contractual release. This motion was originally heard by Judge Reuss of this court on March 12, 1963, at which time he denied the motion without prejudice to the renewal thereof at the trial of the claim. At the trial decision was reserved on this motion.
At the conclusion of claimants’ case, the defendant renewed this motion and moved to dismiss the claim on the further grounds that claimants were not the real parties in interest *279 and that claimants had failed to state a cause of action. Decision was reserved on each of these motions.
Defendant’s motion to dismiss on the ground that claimants are not proper parties to the action is grounded on its assertion that the assignment, set forth in full as Appendix A of this decision,[1] is absolute on its face and thus deprives claimants of any interest they might have in the outcome of the instant claim. (Aster Agency v. State of New York, 12 Misc 2d 44.) A reading of the assignment does not support defendant’s argument. The court finds that the assignment by its terms reveals that it was given in consideration for the execution of an indemnity agreement and that the moneys due or to become due that constituted the subject of the assignment were merely to reimburse the assignee for moneys advanced by it to cover *280 any liens due or to become due to laborers and materialmen. Thus the assignment is not so absolute as to divest claimants of their right to prosecute the instant claim. Moreover, it is significant that the parties to the assignment agreed that any legal action to protect the assignee’s interest could be prosecuted in the name of the assignors, as set forth in the third paragraph thereof. In any case, extrinsic evidence was admitted to show that the assignment was intended merely to secure the assignee, a bonding company, for any moneys it might be required to advance in order to effect the completion of the contract and that the assignee authorized the claimants to file and pursue the instant claim in their own right, merely reserving its riglit to have its interest liquidated out of the proceeds of any recovery, the balance of which was to be retained by claimants. Although the protection of the paroi evidence rule has now been extended to those other than the immediate parties to an agreement, this protection will lie only where the writing contains no obvious or latent ambiguities. (Oxford Commercial Corp. v. Landau, 12 N Y 2d 362, 365 et seq.). In this instance the court is satisfied that the instant agreement, although containing standard phraseology which is framed in terms of an absolute rather than conditional assignment, is ambiguous enough when read as a whole to permit the introduction of extrinsic evidence to show what the parties intended. Therefore, defendant’s motion to dismiss on the ground that claimants are not the real parties in interest must be and is herein denied.
Turning to defendant’s motion to dismiss predicated on acceptance of final payment by the assignee so as to make operative the release contained in claimants’ contract, this court is again required to ascertain the intention of the parties with respect to the following issues: First, whether the assignee retained a sufficient interest in the fruits of this claim so as to make the acceptance of final payment by it operate to bring into play the release, and if so, whether the instant check was understood by the parties to constitute a final payment, and thus bar the instant claim by reason of the afore-mentioned release.
Resolution of the first issue is not accomplished without difficulty. Claimants conceded at the trial and the court finds that the sum of $2,606.68 remained outstanding as the assignee’s interest in the fruits of the instant claim, and that the assignee had never relinquished its interest as to this amount. This finding alone sustains defendant’s argument that it had the right to rely on the assignment and deal directly with the *281 assignee, even after being put on notice that the claimants had filed their claim in this court. The authorities are settled that an obligor on notice of the existence of an assignment of moneys due under its agreement with the assignor is under a legal duty to make any payments thereafter directly to the assignee. One citation, precisely in point, will suffice, to wit, Williams v. State of New York (94 App. Div. 489). Thus claimants’ reliance on recent authorities that hold that the filing of a claim is sufficient to estop the defendant from relying on acceptance of final payment tendered thereafter as a release is unavailing. (Cf. Pearlman v. State of New York, 18 Misc 2d 494.)' The only means by which the theory of estoppel could properly apply would require a finding that the assignee had released the assignment and had filed such release with the defendant prior to the transmission by defendant of the final payment check. Such is not the case.
Therefore, the court must conclude that the assignee had retained a sufficient interest in the outcome of the claim to require that the first issue be decided in the affirmative.
With respect to the second issue, the court finds that claimants rejected the final estimate proffered by defendant on November 22, 1960, and returned the estimate on January 21, 1961, together with an unverified statement of claim and further filed the instant claim with this court on March 24, 1961, a copy of which was duly served on defendant on March 27, 1961. The court further finds that defendant transmitted the final payment check directly to the assignee on April 21, 1961, without any covering letter or notation on the check to indicate that it was intended as a final payment, the acceptance of which would bar any further claim arising out of or in connection with the contract, and that the legal department of the assignee thereafter communicated with claimant Barboni to apprise him of the receipt of the check and informed bim that in their opinion the deposit of the check by them would in no way jeopardize the prosecution of claimants’ pending action in this court.
The conclusion is inescapable that the intention of both claimants and the assignee as manifested by the foregoing findings was to treat the check tendered by defendant solely as final payment for the undisputed balance due under the contract and in no way as release of the instant claim for extra work, labor and materials. This court recognizes as controlling the recent holding of the Appellate Division, Fourth Department, in Buffalo Elec. Co. v. State of New York (17 A D 2d 523). When applied to the instant matter it requires that the defend *282 ant, in order to prevail, must give explicit notice to the assignee that it intends the acceptance of its check to operate as a release of all outstanding claims asserted by either the assignee or the assignor. ¡Under this view of the case, the court need not interpret the terms of the release. Absent the required notice the release is inoperative since the assignee could properly treat the check as nothing more than final payment of the undisputed contract balance. (Buffalo Elec. Co. v. State of New York, supra.) Defendant’s motion to dismiss on this latter ground must be and is herein denied.
Focusing attention on the merits of claimants ’ ease, claimants contend that when the contract was entered into they had made a site inspection and were aware of the existence of utility poles in their construction right of way, but that, as in other highway construction jobs, it was their understanding that defendant would assume responsibility for the removal of these poles prior to the commencement of excavation work. The excavation ■ work was subcontracted to a third party, the latter contract calling for completion of such work on or before June 25, 1959. Claimants introduced uncontroverted evidence that they had made repeated efforts to induce the defendant’s highway engineers to exert pressure on the utility companies concerned to initiate removal of the poles, such efforts dating from the time they commenced operations early in January of 1959, that the contract by its terms did not fix responsibility upon claimants fbr their removal or exonerate defendant from any liability forj failure to require their removal from the worksite, that no real effort was made by defendant to expedite their removal until July 7, 1959, and that the majority of the poles were not removed until on or after July 11, 1959. Claimants’ expert witness further established that the delay occasioned thereby would reasonably cause claimants to lose two months of the time originally alloted for excavation work, and thereby require two additional months in which to complete the contract. Claimants proved that a three-week leeway had been included in their scheduling of the job to provide for contingencies such as bad weather, strikes, shortages of material, and the like, and that the normal termination date for State highway construction work in the immediate area was October 15, due to the onset of freezing temperatures.
Claimants contend further that the resultant delay required them to obtain at least one additional extension of time beyond the final completion date of the contract and that defendant unreasonably assessed engineering charges in connection therewith, which engineering charges were deducted from the final *283 estimate; and that claimants were required to perform additional work not called for by the contract specifications, by the State Engineer’s requiring them to remove snow from the construction site within the Village of McLean during the intervening Winter months, and to keep the road open to traffic during those months, and to resurface the driveway of a private property holder whose land abutted the construction project.
Lastly, claimants assert that they are entitled to recover as damages the reasonable value of additional labor and materials expended to complete the contract, together with the reasonable rental value of equipment which was idle because of the disruption of scheduled work previously alluded to.
Defendant does not controvert the fact that the existing utility poles were not completely removed until the early part of August, 1959, or that its highway engineers did not to a degree have a responsibility in relation thereto, but obtained admissions from claimants and their expert witness that part of the delay was caused by a three-week strike at the gravel pit from which supplies were taken during the month of September, 1959, lack of some of the proper equipment and equipment breakdowns; and also alleged that improper utilization of claimants’ work force was a contributing cause; and that the testimony as to the rental values of such equipment as was utilized by claimants was somewhat exaggerated. On that basis, defendant argues that claimants must establish by a preponderance of credible evidence that the prolongation of the contract was caused exclusively by the acts of the defendant, that the proof demonstrates that additional factors, for which the defendant cannot be held legally responsible, also caused prolongation of the contract. Therefore, defendant argues, since it is equally likely that claimants would have been unable to complete the contract within the time originally specified in any event, claimants may not recover.
The court has given consideration to the arguments of counsel and studied the record and is satisfied that claimants are entitled to an award, although not to the extent sought in their original claim or in the much reduced sum set forth in their proposed findings and conclusions.
First, summarizing the applicable legal principles controlling on the issue of liability, and then discussing the quantum of proof adduced on the issue of damages simplifies the problems presented.
It is too well settled for citation that defendant is under a clear legal duty to provide a highway contractor with an unobstructed worksite, that its failure to do so resulting in any *284 delay which prevents the completion of the work within the period fixed by the contract is deemed not within the contemplation of the parties and thus actionable unless the contract expressly provides to the contrary. In order to escape liability the defendant must prove that reasonable efforts were made by it to obviate the obstructions and that such efforts were frustrated by the contractor’s inability to perform the contract or to other causes which fall outside the orbit of defendant’s responsibility. In this instance, the defendant established that there were in fact other delaying factors, but the only factor of genuine significance that occurred during the initial contract period was the three-week strike at the gravel pit previously mentioned. This factor, when considered in relation to claimants’ estimated “cushion” of three weeks, does not, in the court’s opinion, affect defendant’s liability, but is properly considered in fixing the measure of claimants’ damages.
Absent sufficient proof that the delay was in fact caused by factors within the contemplation of the parties at the time of making of the contract, the defendant is liable for its failure to act diligently in clearing the jobsite (Wright & Kremers v. State of New York, 263 N. Y. 615; Johnson, Drake & Piper v. State of New York, Court of Claims, Claim No. 36525). The fact that the claimants made a site inspection of the proposed contract site does not alter this well-established principle. (Banko, Inc. v. State of New York, 186 Misc. 491; Johnson, Drake & Piper v. State of New York, supra.)
The court finds that the defendant did not provide claimants with the unimpeded worksite which is an implied covenant of this contract, and did not act with sufficient diligence to clear the site after ample notice of the continued existence of the utility poles, with the result that claimants could not perform their obligations ;in a reasonable manner.
With respect tb the imposition of engineering charges, the court finds that such charges were unreasonable in view of its previous finding that the defendant breached its contract with claimants. Absent sufficient proof of the reasonableness of the deduction, engineering charges are improperly imposed under such circumstances. (Johnson, Drake & Piper v. State of New York, supra.)
The damage claims set forth in the original claim other than those for the reasonable rental value of the equipment made idle by the delay occasioned by defendant’s failure to have the utility poles removed, as amended by stipulation of the parties at the trial, are accepted. As to these items the defendant did *285 not introduce any evidence to contradict the proof offered by claimants as to their propriety or reasonableness. (See Johnson v. State of New York, 5 A D 2d 919.)
The court recognizes that the rental value of idle equipment is a proper element of damage. (Johnson v. State of New York, supra.) Notwithstanding this, claimants must prove by credible evidence that the deprivation of the use of such equipment was caused solely by the delay occasioned by the defendant’s failure to expedite the removal of the poles, since the court may not speculate as to the period for which the defendant’s omissions may be said to have injured claimants. It is conceded by claimants that a three-week strike took place in September of 1959 which interfered with the orderly progress of their scheduled work and that they experienced equipment breakdowns during the following year. Considering these factors as an aggregate, the court must reduce the over-all period of enforced idleness directly attributable to defendant’s omissions by one full month, and adjust claimants’ over-all award accordingly. In computing that portion of the award based on the afore-mentioned rental values the court reduced the reimbursement for salaries set forth in claimants’ finding No. 41 as to Louis Barboni, Sr., and Louis Barboni, Jr., by four weeks. Furthermore, the amount of one month’s depreciation on various items of equipment contained in claimants’ finding No. 40 was eliminated, and finally the monthly rental value for items of equipment enumerated in claimants’ proposed finding No. 35 are computed on a two months’ basis rather than on the three months’ basis claimants requested.
Claimants are entitled to an award upon the first cause of action herein in the sum of $8,871.94; upon the second cause of action herein in the sum of $260; upon the third cause of action herein for the sum of $1,500; upon the fourth cause of action herein in the sum of $1,440; upon the fifth cause of action herein in the sum of $4,131; upon the sixth cause of action herein in the sum of $150; upon the seventh cause of action herein in the sum of $14,600; and upon the eighth cause of action herein in the sum of $5,398.39; or the total sum of $36,351.33, together with interest from November 22, 1960 to the date of entry of judgment herein.
This constitutes the decision of the court in conformity with the requirements of section 4213 of the Civil Practice Law and Rules.
The respective parties were given 20 days from the date of receipt of the stenographic minutes within which to submit *286 proposed findings of fact and conclusions of law. Claimants’ proposed findings and conclusions were submitted within that time and have been marked. Defendant did not submit proposed findings and conclusions, and these are deemed waived.

. APPENDIX A
Know all men by these presents, that Raymond Anders and Louis J. Barboni, Jr. d/b/a/ Raymond and Louis Contracting Company of Syracuse, New York (hereinafter designated as “Assignors”), in consideration of and in confirmation of the obligations set forth in an agreement of indemnity heretofore executed and delivered by the said Assignors to the dens Falls Insurance Company of dens Falls, New York (hereinafter designated as “Assignee”), do by these presents formally and specifically assign, sell, transfer and set over unto the Assignee, its successors and assigns, for its own use and benefit, absolute and forever, all money or moneys due or to become due to the Assignor under a certain contract dated on or about the 8th day of January, 1959. made by and between the People of the State of New York, acting through the Department of Public Works and Assignors, covering the reconstruction of a section of road in Tompkins and Cortland Counties, said contract being known as Project S-539 (1) FASS 58-22 HC 48-39);
And the Assignors do hereby authorize, empower and direct the said People of the State of New York to pay to the Assignee, its successors and assigns, any and all moneys due and to become due to the Assignors or their heirs, successors and assigns, by virtue of said contract;
And to facilitate the carrying out of this assignment, the Assignors do hereby appoint the Assignee, its successors and assigns, their lawful attorney irrevocable with full power of substitution and revocation for the Assignors and in the name of the Assignors or otherwise, to ask for, collect, demand, and receive, to prosecute and sue for by proceedings or otherwise in a court of law or equity, to give acquittance for said money or moneys due or to become due or any part thereof, to withdraw any claims, suits or proceedings pertaining to or arising out of this assignment and to endorse any checks or vouchers made payable to Assignors and arising out of this matter;
And the Assignors do hereby further covenant that they will receive any moneys advanced hereunder by Assignee and will hold the right to receive such moneys as a trust fund to be first applied to the payment of trust claims as defined in Section #71 of the Lien Law and that they will apply the same to such payments only before using any part for other purposes.
In witness whereof, the Assignors have caused these presents to be signed on this 20 day of June 1960.