BbrNAbd Ryast, P. J.
Claimant sues to recover $3,400 the bid price on Addendum No. 2, for a contract dated April 16, 1956 for construction work for alterations at the State Office Building, 80 Centre Street, New York City. By virtue of a notice to admit dated February 12, 1959 and duly served pursuant to section 322 of the Civil Practice Act, to which the Attorney- *496 General made no response as tlie statute requires, certain facts are established. {Easley v. State of New York, 10 Misc 2d 370 [1957].) These facts are as follows: Claimant submitted his bid proposal (for the work initially advertised to be done) in the sum of $49,444 on March 21, 1956 at 3:00 p.m. by mailing said bid proposal to the Bureau of Contracts and Accounts, Department of Public Woi’ks, State of New York and deposited with said bid proposal his certified check dated March 20, 1956 in the sum of $2,500 payable to the Commissioner of Taxation and Finance. Pursuant to the terms of the advertised specifications, all bids were to be received on March 22, 1956 by 2:00 p.m. On March 21, 1956 claimant received at his office at 632 Columbus Avenue a notification of a registered letter being held for him at the post office at 83rd Street and Columbus Avenue, New York City and on March 22, 1956 at 10:00 a.m. said registered letter was picked up at said United States Post Office for the claimant by Evelyn Finder. The said registered letter contained an “Addendum #2” from the defendant requiring bidding on additional work and materials. At 12:00 noon on March 22, 1956 claimant sent a telegram to the Department of Public Works, State of New York. Said telegram amended claimant’s aforesaid bid proposal by increasing the bid price by the sum of $3,400 to cover the additional work required by “ Addendum #2 ”. Said telegram was received by the Bureau of Contracts and Accounts at about 12:55 p.m. on March 22, 1956. On March 22, 1956 claimant requested that his bank, the Manufacturers Trust Company, send a certified check in the sum of $145 to the assistant cashier of the State Bank of Albany to cover the additional bid price. Said check was transmitted on March 23, 1956. At 2:00 p.m. on March 22, 1956 defendant opened all the bids and claimant’s original bid proposal of $49,444 was the lowest bid. At 2:00 p.m. on March 22, 1956 defendant also opened claimant’s telegram increasing said bid price to $52,844. Said increased bid was still the lowest bid received by defendant for the work to be done. In listing all bids received defendant accepted from another bidder a telegram decreasing said bidder’s original proposal and pursuant thereto said bidder’s proposal was reduced. Claimant executed the contracts submitted to him by the Bureau of Contracts and Accounts, Department of Public Works, and returned the same with a covering letter of April 17, 1956 reserving his right, prior to final payment, to claim the additional sum of $3,400. Claimant made a claim for the $3,400 prior to final payment by defendant.
*497 Certain other facts, not recited in the notice to admit, are not disputed. On March 23,1956 the State’s Director of the Bureau of Contracts and Accounts wrote to claimant as follows:
“ The Assistant Cashier of the State Bank of Albany has just left in this office Cashier’s Check Number 28977 in the amount of $145.00 stating that this is to be applied to your deposit submitted with your bid on March 22, 1956 for the above project.
“ Inasmuch as this Department does not recognize telegrams increasing bids, the Acting State Architect, C. W. Larson has recommended that this contract be awarded in the amount of $49,444.00. For this reason your check for $145.00 will not be required and it is herewith returned to you by registered mail. ’ ’
To this the claimant replied under date of March 26, 1956 as follows:
“ "We are in receipt of your letter of March 23, 1956 wherein you state that you do not recognize the telegram we sent increasing our bid.
“We respectfully request that you reconsider our telegram which was sent prior to bid opening increasing our bid in the amount of $3,400.00.
“We sent this telegram after our bid had been mailed on March 21, 1956 and we received Addendum #2 on March 22, 1956.”
On April 16, 1956 the claimant signed the contract and acknowledged its execution before a notary public and, as here-, inabove stated, returned it to defendant under date of April 17, 1956. The reservation of claimant’s right, set forth in the notice to admit, was in the following language of the letter of April 17, 1956:
“ Enclosed herewith are five sets of the contract, duly executed and acknowledged with executed bonds attached hereto.
‘ ‘ I am reserving my right, prior to final payment, to claim under an interpretation of the contract, the proposal and award for the additional sum of $3,400., pursuant to my telegram covering Addendum No. 2.”
The letter of April 17, 1956 which is subscribed ‘ ‘ Leonard Contracting Co.” was actually written and signed by claimant’s attorney, William M. Ivler. According to Mr. Ivler, who testified upon the trial, it followed a telephone conversation between him and Mr. Henry A. Cohen, Director of the Bureau of Contracts, on April 13, 1956. Mr. Cohen also testified upon the trial. Asked if he recalled the conversation Mr. Cohen replied:
*498 A. ‘1 The best answer I can make to that is that I receive about 35 telephone calls a day and I have an average of 1,600 contracts and the best answer I can give is that unless it is something very unusual or exceptional and very recent I couldn’t truthfully say that I recall the conversation.”
Mr. Ivler’s version of the conversation was as follows:
‘ ‘ I informed Mr. Cohen that I was calling on behalf of my client, Leonard Pearlman, who does business as Leonard Contracting Company. I stated to him that he had referred to me his letter, meaning Mr. Cohen’s letter, of March 23rd, 1956, and had also referred to me the fact that there had been presented to bim for signature contracts to be executed and returned to the Department of Public Works.'
“ I related to Mr. Cohen the facts as set forth in the Notice to Admit concerning the receipt of Addendum No. 2 and the responses made by the claimant herein thereto, and stated that my client was desirous of preserving his claim regarding the additional $3,400.00 bid.
‘ ‘ At no time did I state to Mr. Cohen the name of my client or the specific contract involved. I stated, however, who I was and where I was located and that I was an attorney calling on behalf of my client.
* ‘ Mr. Cohen advised me that in the covering letter that would accompany the executed contracts I should have stated therein that the contractor reserves his right to an interpretation of the contract and that such language would be sufficient to preserve said claim.
1‘1 thanked him. That was the sum total of that conversation.”
At this point it may be noted that the conflict between Mr. Ivler’s statement as reported in the first paragraph of the excerpt from the stenographer’s minutes of trial and his statement as reported in the third paragraph was not resolved. However, this may be of no significance.
The court denied a motion to strike this testimony as tending to vary the terms of a written agreement. The issue may not be free from doubt but we hold to the belief that the testimony was properly received as explaining the circumstances under which the signed contract was returned to the defendant. More particularly it explains claimant’s letter of April 17, 1956. But is that letter of great aid to claimant? He was, of course, in a difficult position. The State had his original deposit of $2,500 which, had he not signed the contract, he would have forfeited. For the recovery of that sum he had no adequate remedy at law *499 {Psaty v. Duryea, 306 N. Y. 413 [1954]), but would need to rely upon an act of the Legislature as did the plaintiff in that case. (L. 1955, ch. 854; Psaty v. State of New York, Claim No. 33170, May 5, 1956.)
When he was presented with the contract document for his signature, claimant must have observed that it recited that for the consideration of $49,444 (claimant’s original bid) he would perform not only the work specified in the original notice to bidders but that required by Addendum No. 2 as well. As an alternative to surrendering the $2,500 deposited did he elect to do the additional work at a loss? Was he required to make such an election? Is he protected by his reservation?
The action of the State’s officer was, under all the circumstances, arbitrary. In the first place claimant had the right, previous to the opening of bids, to modify his proposal by letter or telegram. {North-Eastern Constr. Co. v. Town of North Hempstead, 121 App. Div. 187 [1907].) When the telegram was received there was as yet no valid or binding contract. If the State’s officers were of the opinion that a telegram did not comply with the conditions for bidding they could have regarded the bid as informal. Proper advertisement requires reasonable notice. Opening of bids may be postponed without abuse of discretion. {Matter of Yonkers Contr. Co. v. Tallamy, 283 App. Div. 749 [1954].) The State Architect’s Standard Construction Specifications of November 1, 1955 (p. 4, par. 9) reads: ‘ ‘ Permission will not be given to modify or explain any proposal or bid after it has been deposited with the Department.” This sentence was, apparently, relied upon by Mr. Cohen as a provision that a proposal cannot be varied or altered by telegram. Until the State had accepted the proposer’s bid there was no valid contract. How then could this provision in the notice to bidders have any legal effect ? It did, no doubt, add strength to the warning that if the State did accept and the proposer did not sign, his deposit would be forfeited. It appears, in this instance, that the State of New York chose to accept an offer which, in effect, was withdrawn. When Pearl-man signed the contract document he did not do so freely and at arm’s length, as the Attorney-General contends, but under duress, choosing the lesser of two evils. He had no other immediate relief. {Radich v. Hutchins, 95 U. S. 210, 213 [1877]; Hornstein v. Paramount Pictures, 37 N. Y. S. 2d 404, 415 [1942], affd. 266 App. Div. 659, affd. 292 N. Y. 468.) Upon this reasoning we are constrained to hold that there was no meeting of the minds on this point that $3,400 worth of work bid for Addendum No. 2 would be performed at no increase of *500 cost to the State of New York and as it is not disputed that the work was done, that the labor and materials were furnished and that the State of New York has had the full benefit thereof, men of fair and reasonable judgment would expect the defendant herein to pay.
There is, however, another hurdle which must he vaulted before this court can direct an award herein. That obstacle is the restrictive clause which provides that acceptance by the contractor of the last payment shall operate as a release for anything done or furnished for or relating to the work. (Buffalo Elec. Co. v. State of New York, 4 Misc 2d 172 [1956] and cases cited.) Claimant did sign the final agreement and did acknowledge its execution on January 21, 1957. Also, he accepted the check for $2,974.80 which was the balance then computed to be due him on the sum of $49,444, the original bid, plus order on contract No. 1 for $280.80.
But the final account notably excluded $3,400 and on September 26, 1956, while work on the contract was still in progress claimant had filed with the Clerk of the Court of Claims and served upon the Attorney-G-eneral a verified document entitled notice of intention. A copy thereof was promptly forwarded by the Attorney-G-eneral to the Department of Public Works and by that department to the Division of Architecture where it became attached to and made a part of the contract file. As this document, although ‘ ‘ baptized ’ ’ notice of intention, recited all the facts needed to constitute a claim against the State it may be regarded as such a pleading. (Chalmers & Son v. State of New York, 271 App. Div. 699, affd. 297 N. Y. 690 [1947].) It is true that later and on March 8, 1957 claimant filed and served another verified document labeled “claim”. This was in language substantially the same as that filed and served on September 26, 1956 and did not add to or diminish the issues presented by the first. Thus we believe it may fairly be said that when, on January 21, 1957, claimant executed the application for payment of $2,974.80 he had no intention of releasing his claim for the additional $3,400, suit for which was then, to all intents and purposes, pending. This is, after all, a question of fact. (Fredburn Constr. Corp. v. City of New York, 280 N. Y. 402 [1939].) We find and decide that under all the circumstances of this case the release clause did not operate. Claimant is entitled to recover.
In reaching the conclusion that the claimant should be paid the sum which he bid for the work to be done under Addendum No. 2, and which work concededly the claimant duly performed, we have in mind that it has been held that the broad grant of *501 power given to the Court of Claims “ necessarily implies the right to afford equitable relief where the same may be incidental to a claim for a money judgment.” (Psaty v. Duryea, 282 App. Div. 94, 99 [1953].) Although the Court of Appeals in affirming that decision said: “We need not determine the full reach of that statement of law, since appellants’ contentions are defeated by the fact that this is a suit against the State itself attempted to be brought in the Supreme Court and, as such, subject to dismissal”, Judge Desmond, writing for the court which concurred unanimously in the result, also said: “We may assume that, in determining claims for money damages against the State, the Court of Claims may apply equitable considerations and perhaps, to some extent, may grant some sort of incidental equitable relief ” (Psaty v. Duryea, 306 N. Y. 413, 417 [1954]).
It seems to us that the record in this case fully justifies our exercise of such broad powers thus relieving claimant from a dilemma wherein he was placed by the arbitrary. action of the State’s officers.
Accordingly an award of $3,400 with interest thereon from January 21, 1957 is directed. Enter judgment accordingly.