Abraham N. Geller, J.
By motion and cross motion both parties seek summary judgment in this action involving an alleged sublease of a factory building in a South Carolina town. Defendant’s motion is based on the ground that the Statute of Frauds renders unenforcible an agreement, not set forth in a writing subscribed by the party to be charged, for a lease for a longer period than one year. Plaintiff maintains that under the equitable doctrines of estoppel and part performance invoked by the courts to prevent the statute being used to perpetrate a fraud it is entitled to judgment for the rent due for the remaining period covered by the sublease, during all of which the factory was not occupied, plaintiff being obliged to pay and paying to the landlord the greater rent due under its lease.
Both parties are corporations with their principal offices in New York City. Plaintiff leased this factory building for a term commencing in 1960 and ending January 7, 1966. In 1962 *386 it decided to discontinue its manufacturing activities in this South Carolina town and listed the building with several real estate firms for subletting. As the result of negotiations with a representative of defendant and an attorney in the law firm under retainer by defendant (who about this time became an assistant secretary of defendant corporation), the parties orally agreed on a sublease for the remaining period of plaintiff’s lease at a rental of $500 a month, far less than plaintiff’s rent, defendant’s attorneys to draw up the sublease and any other documents after reviewing the copy of plaintiff’s lease delivered to them, and with plaintiff agreeing to permit defendant to move into the premises in the meantime.
Defendant moved in about May 19, 1962. Plaintiff notified the brokers that the building was no longer available. Defendant’s attorneys thereafter forwarded a copy of 'the proposed sublease and of the landlord’s required consent to plaintiff for approval by its counsel.
Upon receiving .such approval defendant’s attorneys forwarded the consent for execution by the landlord with a letter stating,. “ Upon being advised of your consent the sublease will be executed by the respective parties ”. There was some delay in obtaining the landlord’s consent, plaintiff’s president being required to go down to South Carolina to see the landlord about it. On July 26,1962 defendant’s attorneys (the letter was signed by the attorney who was defendant’s assistant secretary) wrote to plaintiff, advising they had received the landlord’s consent and that they were forwarding two copies of the proposed sublease for signing by plaintiff and return to them for signature by defendant, together with a consent to the assignment of the sublease to a wholly-owned subsidiary of defendant.
Plaintiff executed the two copies of the sublease and consent and returned same to defendant’s attorneys on July 31, 1962. That same day these attorneys wrote to defendant, enclosing the two copies of “ sublease ” and requesting defendant to sign and acknowledge them, keeping one copy and returning the other to the attorneys. Defendant never returned the copies of the sublease either to plaintiff or to its own attorneys. It gives the following explanation of its conduct: 1 ‘ Prior to the receipt of the owner’s consent and prior to the time that the proposed sublease was forwarded to the defendant for execution, the defendant found that the space which it was occupying was not large enough for its business needs, and the defendant started to construct its own building. Defendant’s attorneys were not notified and did not know that the defendant had decided to stay as a monthly tenant and not to occupy the premises for the *387 entire term of the proposed lease. They, therefore, continued to prepare documents and to correspond with the plaintiff and the owner so as to seek to complete the proposed sublease.”
During the intervening period of defendant’s occupancy plaintiff had requested the monthly rental and had been advised that it would be paid after the sublease was executed. On September 1, 1962 it received defendant’s check for $2,000 representing the monthly rent from June 1, 1962, the commencement date of the sublease, and monthly thereafter it received defendant’s checks for $500 each up to March 1963, when defendant, without even notifying plaintiff, moved out of this factory and into its own building. Defendant had remained in occupancy a total of more than nine months, seven of which were after it received and retained the sublease signed by plaintiff.
Plaintiff’s subsequent attempts to sublet the building were unavailing. Defendant had succeeded in taking over the skilled labor force in this town, which originally had been employed by plaintiff. By maneuvering to remain in operation at plaintiff’s premises while its own building was being constructed, it was able to take this labor force with it while preventing competition from any concern whom plaintiff might have obtained as sub-lessee at that time had defendant informed it of the true facts — that defendant had changed its mind and wanted to remain only as a month-to-month tenant, a proposition which plaintiff would surely have rejected in order to seek a sublessee for the balance of its term. Obtaining a sublessee in June or July, 1962, with no labor force as yet committed to defendant and no other factory building as yet constructed, would no doubt have been more feasible than after defendant’s accomplishment of its purposes rendered such attempt futile. Defendant’s deceptive conduct, which was intended to and did produce a calculated business advantage for it, could reasonably have been anticipated to and did necessarily result in plaintiff’s being-saddled with an unoccupied factory for the remainder of the lease period.
The courts have applied the truism, that the Statute of Frauds may be used as a shield but not as a sword, in permitting recovery on equitable grounds, despite the absence of a signed writing, where the facts spell out an estoppel.
1 ‘ It would be quite antagonistic to the spirit of a statute designed to prevent fraud, if it might be availed of to cover fraud. Therefore, it has been long the settled rule, in England, as here, that when a parol agreement for the conveyance of real estate, void by the Statute of Frauds, has been proved and part performance has been shown by acts of the party seeking *388 relief, which could have been done with no other design than that of performance, if an action at law is not an adequate remedy, the agreement will be specifically enforced. * * * Where by a refusal to execute the parol agreement, the other party, who has in part performed, cannot be placed in the same situation in which he was before such performance, then an irreparable injury is threatened and equity will intervene upon the ground that it would be a fraud if the transaction were not completed.” (McKinley v. Hessen, 202 N. Y. 24, 30.)
“ Undoubtedly mere silence may sometimes found an estoppel, but it must be when there is a duty and opportunity to speak, when silence either is or operates as a fraud to the consciousness of the party who does not speak, and when he knows or ought to know that some one is relying upon his silence, and will be injured by that silence.” (Collier v. Miller, 137 N. Y. 332, 339.)
In Imperator Realty Co. v. Tull (228 N. Y. 447) defendant could without any liability have retracted his oral promise but, giving no warning of a change of mind, abandoned the contract while plaintiff -continued to act to its loss. Judge Cabdozo stated that defendant’s conduct had brought himself within the ambit of the principle of estoppel or waiver “ that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrongs (Riggs v. Palmer, 115 N. Y. 506). The Statute of Frauds was not intended to offer an asylum of escape from that fundamental principle of justice.” (P. 457.)
No elaborate analysis of the-se facts is needed to reach the only just conclusion that defendant should be estopped from invoking the Statute of Frauds and be held to the agreement which was actually made and carried out in great part to defendant’s unfair advantage and plaintiff’s serious loss. Here we have defendant’s attorneys, acting as well in the negotiations on behalf of defendant, preparing all the papers for a legally sufficient written sublease, with no hint or suggestion from defendant that it had previously changed its mind; defendant’s retention of the sublease signed by plaintiff and -subsequent payment of rent to give the impression that the -sublease was in effect; permitted continuance of defendant’s possession for seven more months, which plaintiff would not have permitted had it been informed of defendant’s change of mind, thereby constituting under these circumstances part performance on plaintiff’s part unequivocably referable to the sublease.
Plaintiff is accordingly entitled to summary judgment, there being no triable issues of fact on this -submission. The com *389 plaint served in October, 1963 requested specific performance of the sublease and demanded judgment for the rent then due of $4,000. The term of the sublease having now expired, and the premises not having been sublet to any others, plaintiff is entitled to judgment for the rent due for the remainder of the term, or $17,100, as now demanded in its cross motion. Had it been deemed necessary, the court would have granted plaintiff’s motion to increase the monetary relief requested in the complaint to this sum. It will be treated as if it had been done, particularly since the demand for specific performance gives sufficient notice and encompasses the monetary damage established on the basis of such specific performance.