Litten *v.* Jonathan Logan, Inc., Appellant.

Argued September 16, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

reargument refused January 19, 1972.

*John R. McConnell*, with him *Christopher K. Walters*, and *Morgan, Lewis & Bockius*, for appellant.

*Morris L. Rush*, with him *Irving L. Mazer*, for appellees.

OPINION BY CERCONE, J., December 13, 1971:

This is an appeal by Jonathan Logan, Inc., defendant in the court below, from a judgment upon verdicts for plaintiffs in an action of assumpsit. Motions for judgment n.o.v. and for new trial were denied by the court below.

Plaintiffs are Bernard Litten, his father Irving Litten, and his brother-in-law Harold Romm, Philadelphia residents and owners of Princess Fair, Inc., a New York corporation, and its subsidiary corporation, Roliman, Inc., which companies are engaged in the manufacture, sale and distribution of women's apparel, maintaining offices and principal place of business at 1407 Broadway, New York, New York.

Defendant is a nonresident New York corporation, doing business in Pennsylvania. It is also engaged in the manufacture, sale and distribution of women's apparel. Its President and Chairman of the Board at the time the events involved in this action took place was David Schwartz.

The issue here is whether an oral contract alleged by plaintiffs to have been entered into between plaintiffs and defendant in November 1960, or a written contract signed by plaintiffs and defendant on January

9, 1961, is determinative of the rights of the party litigants.

Plaintiffs assert the right to recover money damages and an accounting on the basis of an oral contract of November 1960, which included among other provisions, an option to plaintiff Bernard Litten to purchase 5,000 shares of defendant's stock at $15.00 a share. Defendant, on the other hand, defends this action on the ground that a later written contract of November 9, 1961, containing no reference to stock option in favor of Bernard Litten, governs the rights of the parties. Plaintiffs contend they were compelled under the duress and coercion of the defendant to enter into the written contract because defendant had maneuvered plaintiffs into an untenable economic crisis from which they could extricate themselves only by signing the agreement prepared by defendant. In a trial presided over by Judge Leo Weinrott, this issue was submitted to a jury which found for the plaintiffs.

Defendant company contends that the court below should have granted its motion for judgment n.o.v. because: (1) the evidence did not support any finding of duress on the part of defendant but did reveal that plaintiffs had ratified the disputed written agreement after its execution; and (2) the oral agreement came within the operation of the Statute of Frauds and was required to have been reduced to writing. Defendant also contends that it is entitled to a new trial because the trial court failed to (1) properly instruct the jury as to what constitutes duress sufficient to vitiate the contract in question; (2) instruct as to a possible finding of plaintiffs' ratification after the execution of the contract and the legal effect of such a finding; and (3) instruct as to the applicability and effect of the Statute of Frauds.

We are of the opinion there is no reason to disturb the jury's verdict by entry of a judgment n.o.v. or the grant of a new trial.

In determining the merits of motions for judgment n.o.v. or for new trial, the Supreme Court of Pennsylvania, in *Connolly v. Phila. Trans. Co.*, 420 Pa. 280 (1966), stated: "In considering a motion for judgment n.o.v., the evidence together with all reasonable inferences therefrom is considered in the light most favorable to the verdict winner. Lewis v. United States Rubber Co., 414 Pa. 626, 202 A. 2d 20 (1964); Pritts v. Wigle, 414 Pa. 309, 200 A. 2d 386 (1964); Chambers v. Montgomery, 411 Pa. 339, 192 A. 2d 355 (1963), and in reviewing on appeal, we stated in Vignoli v. Standard M. Freight, Inc., 418 Pa. 214, 210 A. 2d 271 (1965): 'The grant or refusal of a new trial will not be reversed on appeal, absent an abuse of discretion or error of law which controlled the outcome of the case.' See Chambers v. Montgomery, supra."

This being the law, there was ample evidence from which the jury could have determined that the plaintiffs executed the written agreement of January 9, 1961 under "business compulsion" or "economic duress" into which defendant maneuvered plaintiffs during their negotiations with each other.

The evidence on behalf of plaintiffs is substantially as follows:

Defendant, in June 1960, because it did not have, but desired to have, the particular line of women's wearing apparel manufactured by plaintiffs, offered to purchase plaintiffs' two corporations, Princess Fair and Roliman; to employ plaintiffs for a term of three years, and to give a stock option to Bernard Litten. Plaintiffs refused to sell. In the latter part of September 1960, the plaintiffs' two corporations were in an inventory bind, but were financially solvent and had a net worth in excess of $140,000.00. At that time plaintiffs were not in drastic financial difficulties because they could have obtained from their creditors an extension of time for payment; could have factored their

accounts receivable (as suggested by the creditors); could have sold their business to a Marlene Blouse Company, or could have obtained additional financing. Nevertheless, at the urging of the accountant who worked for both parties, the plaintiffs and defendant resumed negotiations for the sale and purchase of plaintiffs' corporations.

In November 1960, plaintiffs and defendant orally agreed that in exchange for all the stock of plaintiffs' two corporations, defendant would pay the corporations' creditors; pay off the corporations' bank loans which were guaranteed by plaintiffs and their wives; pay to plaintiffs any monies remaining in excess of such payments from the assets of the corporation; employ plaintiffs for a term of one year, beginning January 1, 1961, at stipulated salaries and give Bernard Litten, one of the plaintiffs, an option to purchase 5,000 shares of defendant stock at $15.00 per share, said option to be exercised during the year's employment.

In reliance upon these mutual oral promises plaintiffs made no further effort to resolve their financial situation through other channels or means.

In further reliance upon the oral agreement and upon the good faith and integrity of defendant, plaintiffs, at the insistence of defendant's President and Chairman of the Board, and on the advice of their attorney, transferred and assigned to defendant, on November 22, 1960, the entire stock of the two corporations. At the same time, plaintiffs waived or relinquished their rights to repayment of loans they had made to the two corporations. Thus, defendant became sole owner of the two corporations and plaintiffs were left depending on defendant to carry out its oral promises. Defendant made an initial payment of $15,000 to the creditors on November 28, 1960. Defendant refused to pay the creditors in full on December 22, 1960, the date fixed, and still refused to pay on January 5, 1961,

to which date time for payment had been extended. The creditors immediately threatened plaintiffs with bankruptcy. On January 9, 1961, four days after the last date fixed for payment, defendant delivered to plaintiffs a written agreement which defendant stated had to be signed that day. The agreement was basically different from the one orally agreed upon and plaintiffs refused to sign. It did not include provision for return of excess monies from liquidation, contained no stock option to Bernard Litten, and no one year employment clause. Defendant insisted that neither the creditors nor the banks would be paid unless plaintiffs signed the written agreement as prepared by defendant's attorney. Plaintiffs' attorney, who happened to be a brother of defendant's attorney, advised them they had no alternative but to sign. Bernard Litten then telephoned David Schwartz, telling him that he had stolen their business, that he was "putting a gun to his head", and was requiring them to sign a different agreement, to which Schwartz replied that if the agreements were not signed, that would be the end of the transaction; he would not pay the creditors. Faced with immediate financial disaster and without immediate legal relief, plaintiffs were compelled to sign the agreement on January 9, 1961. Continuous requests by plaintiffs of defendant's President and Chairman of the Board that the oral agreement of November 1960 be honored brought no relief for plaintiffs. In fact, because of plaintiff Bernard Litten's insistence that the oral promises of defendant be lived up to, all the plaintiffs who had begun work for defendant were fired within a month and a half to two months after they began work. Before and after the termination of his employment, Bernard attempted to prevail upon their then counsel who was, as already stated, brother of defendant's counsel, to have defendant agree to the original terms or to institute legal action against defendant,

but was told to "just take it easy, and just work, and let me work on it". Later, when further pressed, plaintiffs' counsel required a $5,000 retainer fee prior to instituting suit, which fee plaintiffs were not in a position to pay. Plaintiffs later acquired the services of their present counsel who instituted suit in their behalf in 1962.

Under the plaintiffs' evidence, as above summarized, the jury was justified in finding that on January 9, 1961, all avenues which plaintiffs could have pursued to find solution to their financial problems had been closed off because of the inescapable economic peril in which defendant had slowly but inexorably placed them after the date of the oral agreement. Plaintiffs, once they had turned over all of the stock of their two corporations to defendant had lost independence of decision, arms length advantages, and, most important, time and circumstance to control the future of their corporations which they did have prior to the events which tied their economic destiny to the decisions of defendant.

Accepting their evidence as most favorable to them, prior to November 1960, plaintiffs could have solved their initial economic difficulties. It was not until defendant had put them into an inextricable financial crisis that plaintiffs were compelled to sign the written contracts. No amount of lawyer's advice or plaintiffs' business experience could have assisted plaintiffs.[1] If plaintiffs had refused to sign, bankruptcy would have been the result. Defendant and only defendant had the choice of preventing bankruptcy for the corporation and personal financial disaster for plaintiffs. The only recourse for plaintiffs on January 9, 1961 was to sign the written contract. This is the kind of duress con-

---

[1] Therefore, the cases relied on by defendant that there can be no duress where the contracting party is free to consult with counsel are not here applicable.

templated by the decisions of the New York courts.[2]
*Pearlman v. State,* 18 Misc. 2d 494, 191 N.Y.S. 2d 422
(1959); *Wou v. Galbreath-Ruffin Realty Co., Inc.,* 22
Misc. 2d 463, 195 N.Y.S. 2d 886 (1959). See also 79
A.L.R. 657; *Tri-State Roofing Co. of Uniontown v.
Simon,* 187 Pa. Superior Ct. 17 (1958), having refer-
ence to the interpretation of "business compulsion" or
"economic duress" by the New York courts; Restate-
ment, Contracts, Section 493; 17A Am. Jur. 564, Sec-
tion 7.

The important elements in the applicability of the
doctrine of economic duress or business compulsion are
that (1) there exists such pressure of circumstances
which compels the injured party to involuntarily or
against his will execute an agreement which results in
economic loss, and (2) the injured party does not have
an *immediate* legal remedy: *Hornstein v. Paramount
Pictures,* 22 Misc. 2d 996, 1007, 37 N.Y.S. 2d 404, 415-
416 (1942). The cases cited by defendant on this
point, including *Nixon v. Leitman,* 32 Misc. 2d 526,
224 N.Y.S. 2d 448 (1962), *United States Envelope
Co. v. City of New York,* 2 A.D. 2d 343, 155 N.Y.S.
2d 816 (1956), *Smith v. Lenchner,* 204 Pa. Superior Ct.
500 (1964), are inapplicable because in those cases the
defendants did not bring about the state of financial
distress in which plaintiffs found themselves at the
time of signing. In the instant case, the final and
potentially fatal blow was prepared by defendant,
which by its actions created the situation which left
plaintiffs with no alternative but to sign the contract
as written.

---

[2] No issue is raised as to the conclusion that since the trans-
actions took place in New York, the law of that state applies to
the issues involved in this case. However, we may note in passing
that Pennsylvania law does not differ and, therefore, if it were
to be applied, the result here reached would be the same.

Contrary to defendant's contention, the trial court did adequately charge the jury that coercion or duress must be a force exerted by the defendant, for it clearly stated that: "Duress exists whenever one person, *by the unlawful act of another,* is induced to enter into contractual relations under such circumstances as to indicate that he has been deprived of the exercise of free will. . . . Now, *regardless of the means employed,*[3] duress is shown whenever the force or threat thereof is sufficient to overcome the will of the particular person. (Emphasis supplied.)

"A threatened breach of contract ordinarily is not in itself coercive but if failure to receive the promised performance will result in irreparable injury to business, the threat may involve duress. Business compulsion is a species of duress, not the common law duress, but duress clothed in modern dress, and for this reason the early common law doctrine of duress has been expanded to include business compulsion.

"Business compulsion is not established merely by proof that consent was secured by the pressure of financial circumstances, but a threat of serious financial loss may be sufficient to constitute duress and to be ground for relief *where an ordinary suit at law or equity might not be an adequate remedy.* There must, however, be more than a mere threat which might possibly result in injury at some future time, such as a threat of injury to credit in the indefinite future. It must be such that, in conjunction with other circumstances and business necessity, the party coerced fears a loss of business unless he does so enter into the contract demanded." (Emphasis supplied.)

In so charging the jury, the trial court was following the Restatement of the Law of Contracts, Section 493, and 17A Am. Jur. 564, Section 7, as quoted by this

---

[3] This indicates some means employed by defendant.

court in *Tri-State Roofing Co. of Uniontown v. Simon,* supra, in interpreting the law of New York (also governing in this case) as set out in *Hornstein v. Paramount Pictures,* supra.

Defendant's contention that the written contract was fair ignores the issue that the written contract did not contain all the provisions of the oral agreement upon which the plaintiffs agreed to turn over all of the stock of their two corporations to defendant.

In support of its contention of error concerning the trial court's refusal to instruct as to ratification, defendant relies on the trial judge's refusal to charge on its points 27 and 28. A reading to the jury of those points[4] would have been equal to a directed verdict for defendant.

Defendant did not take an exception to the trial judge's review of the facts, nor did it take an exception respecting the court's failure to charge on ratification. In *Zeman v. Canonsburg Boro.,* 423 Pa. 450, 453 (1966), the court stated: "In Segriff v. Johnston, 402 Pa., supra, the Court said (page 113): '. . . "a party may not sit by silent, take his chances on a verdict, and, if it is adverse, then complain of matter which, if error, could have been eradicated during the trial if brought to the court's attention properly and timely. Keefer v. Byers [398 Pa. 447, 159 A. 2d 477]; Commonwealth v. Razmus, 210 Pa. 609, 611, 60 A. 264." Bell v. Yellow Cab Co., 399 Pa. 332, 338-39, 160 A. 2d 437. "A proper ad-

---

[4]"27. Plaintiffs under oath and in Court in April of 1961 asserted the validity of the written contract of January 9, 1961 and they are bound thereby.

"28. Even if the contract of January 9, 1961, had been obtained by economic duress, such a contract is voidable and not void. Plaintiffs have done nothing to set the contract aside. To the contrary, as was stated, the plaintiffs relied on the contract to defeat defendant's efforts to obtain the books and records of Princess Fair."

ministration of justice requires that new trials be not granted on errors which counsel had ample opportunity to correct. It is only when errors are basic and fundamental and cannot be corrected at the trial that this Court will consider them under a general exception: (cases there cited)" '."

Furthermore, the court's charge was not prejudicially deficient because of failure to instruct as to the doctrine of ratification of the written contract. Such instruction was unnecessary to the facts of the case because plaintiffs' acceptance of employment from defendant, plaintiffs' acceptance of defendant's assumption of their personal liabilities as guarantors of bank loans, and plaintiffs' statements under oath in defendant's action of replevin were all consistent with the terms of the oral agreement relied on by plaintiffs and admitted by defendant. For that reason, the cases relied on by defendant are all distinguishable. The fact that plaintiffs had not asserted in writing until this lawsuit seventeen months after January 9, 1961, that the written contract had been procured by business compulsion or economic duress, standing alone, did not require the issue of ratification to be submitted to the jury, in view of the other evidence in the case.

For the same reasoning, the defendant also cannot succeed in its alternative contention that it was entitled to a judgment n.o.v. because plaintiffs' ratification of the contract appeared as a matter of law.

The factual issues presented by the evidence were properly delineated by the trial judge to be (1) whether or not there was coercion or business compulsion sufficient to vitiate the January 9, 1961 written contract; and (2) if such coercion and compulsion was found to exist, whether or not the oral agreement as alleged by plaintiffs was in fact entered into in November 1960.

Defendant also contends that there was no evidence of an unconditional promise by defendant to grant such option or of due demand thereof by plaintiffs. However, again taking the evidence in the light most favorable to plaintiffs, there is sufficient evidence in the case to support a finding that, as part of the agreement between the parties, David Schwartz, President of defendant company, acting for and in behalf of the defendant, granted Bernard Litten the option to purchase 5,000 shares of stock of defendant company. Whether those shares were to come from Mr. Schwartz or directly from the company would be immaterial, as the value of such shares constituted part of the consideration on which the transaction between defendant company and plaintiffs was based. As to lack of express exercise of the option, in view of the attitude of the company and Mr. Schwartz in refusing to prepare a written agreement containing such option, as repeatedly requested by Bernard Litten, Bernard Litten was not required to make a useless gesture or go through a vain ceremony. As stated in *Sunseri v. Mancuso*, 362 Pa. 161, 163 (1949): "The court below in its opinion said, inter alia, 'Where a party avows his intention not to live up to his contract, tender is unnecessary since, as was said in Suchan v. Swope, 357 Pa. 16, 23, ". . . the law is too pragmatic in its philosophy to require the doing of a vain and useless act: . . ." Prior to the settlement date the respondents had repudiated their contract and signified that it constituted "no deal". This fact had been communicated by the respondents' agent to Mrs. Sunseri. Under all these circumstances it was quite evident that formal tender would be a vain ceremony which the law does not require.' "

Defendant contends that the oral agreement could not be relied upon by plaintiffs because it did not comply with the Statute of Frauds of New York requiring contracts for the sale of goods worth $500.00 or more

to be in writing in order to be enforceable. However, it would be an anomaly to permit a defendant to rely on an absence of writing containing the stock option when the very issue is whether the absence of a writing was the result of duress practiced upon plaintiffs by defendant. To permit the defendant to avail itself of the Statute of Frauds in such a case would be to permit it to use the statute to perpetrate a fraud contrary to the intendment of such a statute to prevent the perpetration of a fraud. As stated in *McKinley v. Hessen*, 202 N.Y. 24, ". . . It would be quite antagonistic to the spirit of a statute designed to prevent fraud, if it might be availed of to cover fraud." In *McKay Products Corp. v. Jonathan Logan, Inc.*, 54 Misc. 2d 385, 283 N.Y.S. 2d 82 (1967), affirmed 289 N.Y.S. 2d 140 (1968), a case involving the same defendant as in the case now before this court, defendant was not permitted to avail itself of the defense of Statute of Frauds where the sublease sued upon by plaintiff was oral and not signed by defendant company. Defendant had moved into the plaintiff's premises even though it had not signed the sublease executed by plaintiff and sent to defendant's lawyer. The court held that defendant company could not cause plaintiff to act to its detriment in reliance on the expected written sublease so as to permit defendant to move out of the leased premises prior to the term agreed upon merely because the terms had not been reduced to writing, the court saying: "No elaborate analysis of these facts is needed to reach the only just conclusion that defendant should be estopped from invoking the statute of frauds and be held to the agreement which was actually made and carried out in great part to defendant's unfair advantage and plaintiff's serious loss."

As to the measure of damages in regard to the value of the stock not obtained by Bernard Litten, it is first to be noted that the jury, by its verdict in favor of

Bernard with regard to the 5,000 shares of stock, necessarily found that he was entitled thereto by virtue of the November 1960 oral agreement and that the defendant wilfully and deliberately refused to deliver the same to him and caused plaintiffs to sign a written agreement sans option by reason of duress. Under such circumstances, the proper measure of damages for such failure to deliver was the difference of $15.00 per share to be paid by Bernard and the highest value of the stock up to the date of trial (April 1968) and not merely up to the date fixed for delivery (1961). See *Gervis v. Kay*, 294 Pa. 518 (1928) for a review of the New York and Pennsylvania law in this connection. It follows, therefore, the trial court did not err in instructing the jury as to the basis for calculating damages for failure to deliver the stock.

Nor can we agree with the defendant's contention that the matter of accounting as to the amounts received in liquidation of the assets of Princess Fair and Roliman is to be submitted to arbitration in accordance with the terms of the January 9, 1961 written agreement. The jury by its verdict vitiated the said written agreement and the right to an accounting is based on the oral agreement of November 1960.

There being no reason for our disturbance of the jury's verdict in favor of the plaintiffs, the judgment of the court below is accordingly affirmed.

---

DISSENTING OPINION BY MONTGOMERY, J.:

I cannot find in this record any reason to permit plaintiffs to recover on an oral agreement allegedly entered into by the parties in November, 1960, in the face of a complete written contract executed on January 9, 1961, with the advice of counsel.

The argument of duress advanced by plaintiffs as a reason to modify the written contract so as to permit recovery on the alleged antecedent oral agreement is

not tenable. The duress asserted by plaintiffs is economic duress. It may be assumed that the defendant made overtures to plaintiffs to purchase their business in June of 1960, when they were solvent but had had business reverses suggesting a compromise with creditors and that they refused to sell at that time. This fact does not support their argument that in January, 1961, when they signed the written contract, they were under any economic duress emanating from the defendant.

Unquestionably, by January 9, 1961, plaintiffs had got themselves into a situation where their solvency was questionable. Their liabilities at that time were over $270,000 and they were threatened with bankruptcy by their creditors. It was at this time and in this situation that the defendant agreed (1) to pay the liquidating value of the companies to plaintiffs, which was to be determined on the basis of directions set forth in the agreement and (2), to employ plaintiffs for a year, subject to termination by either party on one week's notice. In return, defendant was to receive 40 shares of the common stock and 700 of the preferred stock of Princess Fair Blouse and 20 shares of the common stock of Roliman, Inc., certified to be all of the outstanding stock of those two corporations and held in the name of Bernard Litten.

The defendant performed its part of the contract by paying off the creditors and employing the plaintiffs. Although the plaintiffs were subsequently discharged before the expiration of one year, the written contract provided for their dismissal upon giving one week's notice, which was given.

The majority, in allowing recovery on the theory of economical duress, says, "If plaintiffs had refused to sign, bankruptcy would have been the result. Defendant and only defendant had the choice of preventing

bankruptcy for the corporation and personal financial disaster for plaintiffs. The only recourse for plaintiffs on January 9, 1961, was to sign the written contract. This is the kind of duress contemplated by the decisions of the New York courts."

I find the New York decisions to the contrary. *Allstate Medical Laboratories, Inc. v. Blaivas,* 26 A.D. 2d 536, 271 N.Y.S. 2d 371 (1966), aff'd, 20 N.Y. 2d 654, 282 N.Y.S. 2d 268 (1967); *Glicman v. Barker Painting Company,* 227 A.D. 585, 238 N.Y.S. 419 (1930). Restatement of Contracts, §492, also supports my view. Plaintiffs' pending bankruptcy was not caused by any wrongful act of the defendant and the agreement was signed by persons well versed in business practices and upon the advice of counsel, which nullifies any contention of duress. *Carrier v. William Penn Broadcasting Company,* 426 Pa. 427, 233 A. 2d 519 (1967); *Smith v. Lenchner,* 204 Pa. Superior Ct. 500, 205 A. 2d 626 (1964). Furthermore, need of financial assistance is not considered sufficient to avoid a contract on the theory of economic distress. *Joseph F. Egan, Inc. v. City of New York,* 18 A.D. 2d 357, 239 N.Y.S. 2d 420 (1963); *Lawlor v. National Screen Service Corporation,* 211 F. 2d 934 (1954), reversed on other grounds, 349 U.S. 322, 75 S. Ct. 865, 99 L. Ed. 1122 (1955); *Colonial Trust Company v. Hoffstot,* 219 Pa. 497, 69 A. 52 (1908). In 17 Am. Jur. 2d, Contracts, §153, the rule is stated: "But an agreement signed because a party is in straitened circumstances and greatly embarrassed and in pressing want of pecuniary means, where the other party to it is not responsible for those circumstances and had not created those necessities or embarrassments, is a voluntary act, and he is bound by its terms."

The New York cases cited by the majority as authority are distinguishable from the present case. In

*Pearlman v. State,* 18 Misc. 2d 494, 191 N.Y.S. 2d 422 (1959), the State compelled the inclusion of extra work in the contract after plaintiff had submitted his bid. Thus under the duress emanating from the State the plaintiff was compelled to comply with the demand and sign the contract or forfeit $2,500 which it had deposited with its bid and for which there was no right of recovery. The Court in that case said, page 499, "When Pearlman signed the contract document he did not do so freely and at arm's length, as the Attorney General contends, but under duress, choosing the lesser of two evils. He had no other immediate relief.

In *Wou v. Galbreath-Ruffin Realty Co., Inc.,* 22 Misc. 2d 463, 195 N.Y.S. 2d 886 (1959), the duress was asserted by one of the parties. The plaintiff at trial after agreeing to vacate the leased premises for a consideration by a certain date refused to do so unless paid additional compensation. This would have resulted in a great hardship to the other party, which had made plans at great expense to have the building demolished as of the date their tenant had agreed to vacate. To avoid this loss the tenant was promised more money to accomplish his removal. On the theory of duress he was denied this additional consideration.

The present case involves no such situation. These parties negotiated from September, 1960, until January 9, 1961, for the purchase of plaintiffs' business. During this period plaintiffs refused the various offers made by the appellant, while during the same period their business was deteriorating. During this period they had numerous oral understandings but it was not until January 9, 1961, when the business had reached the bankruptcy point, that they crystallized their understandings and entered into the final written agreement. All during this period they dealt at arm's length as experienced businessmen and with the advice of

counsel; and therefore, on the age-old theory that all preliminary negotiations are considered as being finalized as stated in their writing, that contract may not be altered by oral testimony in the absence of fraud, accident or mistake. I find none of those elements present in this case and would hold the parties to the terms of the written agreement.

Furthermore, if any wrong was done by defendant, such was not charged until seventeen months following the execution of the contract and after plaintiffs had accepted all of the benefits the contract afforded. Their long delay indicates an acceptance of the contract as written. *Joseph F. Egan, Inc. v. City of New York,* supra; *Port Chester Electrical Construction Corp. v. Hastings Terraces, Inc.,* 284 A.D. 966, 134 N.Y.S. 2d 656 (1954).

If however, the alleged oral agreement giving Bernard Litten an option to purchase stock in defendant's corporation at a fixed price were considered as a separate undertaking, it fails to satisfy the New York Statute of Frauds. Corporate stock is covered by that statute, which requires contracts for the sale of goods of the value of $500 to be in writing. Corporate stocks are held to be goods under this statute. N.Y. Sess. Law 1911, c. 571, §85, as amended (now New York Uniform Commercial Code, §§2-201 and 8-319). *Agar v. Orda,* 144 Misc. 149, 152, 258, N.Y.S. 274, 276, aff'd, 239 A.D. 827, 264 N.Y.S. 939, aff'd, 264 N.Y. 248, 190 N.E. 479; and furthermore, there is no separate consideration shown to support such a claim.

For the foregoing reasons, I would reverse the judgments entered in favor of plaintiffs and enter a judgment n.o.v. for the defendant.

Therefore, I respectfully dissent.

JACOBS, J., joins in this dissenting opinion.