## Izzi v. Frosterly Financial Corporation

*Jay D. Barsky*, for plaintiff.

*Edward J. Kaier* and *Thomas J. McCormack,* for defendants.

RIBNER, J., June 25, 1973.—This action, which was heard in equity, raised the following issues: Did defendant breach the contract between himself and plaintiff by procuring a mortgage that differed substantially in terms and amount from that specified in the contract? If so, we must then determine whether plaintiff, by accepting the mortgage subsequently offered, waived his rights to recovery.

## FINDINGS OF FACT

1. Plaintiff, John Izzi, is an individual residing at 16 Broadway West, West Chester, Chester County, Pa., and engaged in business as a real estate broker.

2. During December 1964, and January 1965, defendant, Charles J. Miller, represented to plaintiff that he was authorized to act for and on behalf of Frosterly Financial Corporation, which Miller represented to be a licensed real estate broker under the laws of the Commonwealth of Pennsylvania.

3. During the period of negotiations between plaintiff and defendant Miller, Frosterly Financial Corporation was neither a corporation duly authorized and existing under the laws of the Commonwealth of Pennsylvania nor a licensed real estate broker under the Real Estate Brokers License Act of May 1, 1929, P. L. 216, 63 PS §431, et seq.

4. Relying on the representations stated in paragraph 2, above, Izzi requested defendant, Frosterly Financial Corporation, to procure a land mortgage in the amount of $50,000 for a period of one year with interest at the rate of six percent per annum, and another mortgage in the amount of $750,000.

5. The mortgages were sought to enable plaintiff to finance the development of a shopping center in West Goshen Township.

6. In order to effectuate said mortgages, plaintiff deposited various amounts totalling $6,250 with defendant, Charles J. Miller, during the period from January to April 1965.

7. The land mortgage secured by defendant was in the amount of $30,000 for a period of six months with interest at the rate of one percent per month. No commitment was secured for the $750,000 mortgage.

8. At the time of settlement, plaintiff assented to the terms and conditions of the $30,000 land mortgage.

9. Of the $6,250 deposited by plaintiff, $2,750 was used for interest payments on the $30,000 mortgage.

10. Defendant Miller, either as an individual or in behalf of a corporation with which he is in contact, is holding the remaining $3,500, which said defendant believes is due for his services in procuring the aforesaid land mortgage.

## DISCUSSION

It is clear that defendant breached his contract with plaintiff. Yet the question is raised as to whether plaintiff destroyed his rights to recover the commissions he paid to defendant by accepting the mortgage that was offered to him.

The land mortgage was sought by Izzi along with commitments for other loans as part of his plans for the development of a shopping center in West Goshen Township. As a result of communications between the parties, plaintiff believed that the land mortgage of $50,000 at an annual interest rate of six percent had been procured. It was not until the morning of settlement day, April 6, 1965, that plaintiff was advised that

the $50,000 was not available. Rather, a loan of $30,000 at an annual rate of 12 percent was offered. Plaintiff did accept those new terms, but only as a result of economic duress or business compulsion.

In Litten v. Jonathan Logan, Inc., 220 Pa. Superior Ct. 274 (1971), the court set forth the conditions that must be met in order for the doctrine of economic duress or business compulsion to be applicable. First, there must exist such pressure of circumstance which would compel the injured party to involuntarily execute an agreement which results in economic loss. Secondly, the doctrine becomes applicable where the injured party does not have an immediate legal remedy.

In Litten, supra, at page 283, the court quotes portions of the trial judge's charge as to the nature of business duress:

" 'A threatened breach of contract ordinarily is not in itself coercive but if failure to receive the promised performance will result in irreparable injury to business, the threat may involve duress. Business compulsion is a species of duress, not the common law duress, but duress clothed in modern dress, and for this reason the early common law doctrine of duress has been expanded to include business compulsion.'

" 'Business compulsion is not established merely by proof that consent was secured by the pressure of financial circumstances, but a threat of serious financial loss may be sufficient to constitute duress and to be ground for relief *where an ordinary suit at law or equity might not be an adequate remedy*. There must, however, be more than a mere threat which might possibly result in injury at some future time, such as a threat of injury to credit in the indefinite future. It must be such that, in conjunction with other circumstances and business

necessity, the party coerced fears a loss of business unless he does so enter into the contract demanded.'" (Italics in original.)

Refusal of the loan and a subsequent court action brought by plaintiff to compel the production of the original mortgage would not have been an adequate remedy under the circumstances of our case, since such procedure would have delayed indefinitely the development of the shopping center. Hence, plaintiff's acceptance of the mortgage did not constitute an effective waiver. We, therefore, made the following

## CONCLUSIONS OF LAW

1. Equity has jurisdiction.

2. There was a failure of consideration in the contract entered into between plaintiff and defendant, Charles J. Miller, in that a mortgage was not obtained in the amount of $50,000 with interest at an annual rate of six percent.

3. Plaintiff did not waive his rights to recovery of the moneys paid to defendant as commission because of his acceptance of the mortgage offered by defendant.

## DECREE NISI

And now, June 25, 1973, it is ordered, adjudged and decreed that defendant, Casimir J. Przybylowski, a/k/a Charles J. Miller, either in his individual or corporate capacity, pay to plaintiff the sum of $3,500 plus interest from March 2, 1966, in the sum of $1,522.50.

This decree nisi shall be final as of course unless exceptions are filed within 20 days after notice hereof.