## Twining Services Corp. v. Northampton Bucks County Municipal Authority

*John Kerrigan*, for plaintiff.
*Michael Scott*, for defendants.

GARB, *J.*, June 26, 1984—This is an action challenging the sewer rates charged by defendant under section 306B (h) of the Municipality Authorities Act as most recently amended by the act of November 26, 1978, P.L. 1399, 330, §802 (a), 53 P.S. §306B (h). As such, our scope of review has been set forth in *Patton-Ferguson Joint Authority v. Hawbaker*, 14 Pa. Commw. 402, 332 A.2d 783 (1974). See also, *Blumenschein v. Pittsburgh Housing Authority*, 379 Pa. 566, 109 A.2d 331 (1954) and *Marnickas v. Tremont Municipal Authority*, 67 Pa. Commw. 117, 445 A.2d 1383 (1982). In *Patton-Ferguson* it was stated that our review of a rate resolution is limited to a determination of whether or not there has been a manifest and flagrant abuse of discretion or an arbitrary establishment of the rate system. The burden is on plaintiff to prove that the authority

abused its discretion by establishing a rate system which was either unreasonable or lacking in uniformity. *Patton-Ferguson Joint Authority v. Hawbaker,* supra.

Plaintiff operates an establishment known as Twining Village which consists of 220 residential units, each containing living rooms, dining rooms, kitchens, either one or two bedrooms and one or two baths. The bathrooms are fully equipped with toilets, wash basins and bathtubs and the kitchens with sinks and stoves. In addition, plaintiff maintains a nursing facility of 82 beds as well as a community center composed of a dining room, barber shop, beauty salon, coffee shop and various other shops and amenities, as well as toilet facilities. There is, of course, a full kitchen for the purpose of preparing the food to be served in the dining room of the community center. There are likewise laundry facilities maintained in the community center. All of the foregoing, including the 220 residential units, are maintained under one roof. However, the 220 residential units are rented individually as unfurnished living units. It is a requirement that each resident eat at least one meal per day in the dining room maintained in the community center. The 82-bed nursing facility is licensed as such by the Pennsylvania Department of Health but the 220 residential units are not so licensed.

The authority applies a flat rate sewer charge on each of the 220 residential units but only upon those which are occupied. The sewer rates applied to the nursing facility and community center are based upon water meter rates.

On December 1, 1976, and again in February 1978, plaintiff entered into agreements with defendant under the terms of which the foregoing

rates were agreed upon. The agreements aside, however, it was established on this record that defendant charges all of its residential customers a flat sewer rate which is the same as the rate charged to the dwelling units of plaintiff. It was further established that defendant charges all of its commerical customers a sewer rate based upon the water usage as reflected by the water meters. Therefore, it is clear that the manner of billing for sewer rates in this case is consistent with and the same as the rates charged to all other customers by defendant. Therefore, clearly, plaintiff has failed to establish that the manner of billing in this case is lacking in uniformity. See *Patton-Ferguson Joint Authority v. Hawbaker,* supra.

Once again, regardless of the contract between the parties, it has been firmly established that it is not an abuse of discretion for a municipal authority to charge flat rates as opposed to rates for particularized and specific use of its facilities. See *Caudriet v. Township of Benzinger,* 49 Pa. Commw. 275, 411 A.2d 846 (1980) and *Falls Township Authority v. Penn Park Inc.,* 24 Bucks Co. L. Rep. 195, 61 D.&C.2d 533 (1972).

Nothing is to be gained by our engaging in an extended discussion of whether these dwelling units can be appropriately denominated as "apartments" or something else. Each is clearly a separate living unit consisting of living rooms, dining rooms, kitchens, bedrooms and baths. They are rented to the occupants unfurnished. Each is separate and distinct from the other with sole possession of each reserved to the renting party. Although they are under the same roof as the community center and the 82-bed nursing home, they are specifically not licensed as a nursing home, hospital or anything else. The occu-

pants are free to come and go as they please, the sole condition being that they eat at least one meal per day in the community center. They have been advertised continually as apartments. We cannot find the treatment of them by defendant as apartments to constitute a manifest abuse of discretion.

Lastly, it was stipulated that two similar types of living units for the elderly in adjoining municipalities are charged for sewer usage in exactly the same way.

Essentially, it is the argument of plaintiff that it would be more fair and just to bill all units on the basis of the water usage as reflected by meter readings. Perhaps that is so. However, although we may have a different opinion or judgment in regard to the manner in which the agency bills its customers, that is not a sufficient basis for our interference. Judicial discretion may not be substituted for administrative discretion under these circumstances. See *Blumenschein v. Pittsburgh Housing Authority,* supra and *Patton-Ferguson Joint Authority v. Howbaker,* supra. A municipality may create classifications of users so long as the charge is uniform within the classification and is reasonably proportional to the services rendered. Since all apartments pay the same rate, it is obviously uniform. *Glen Riddle Park Inc. v. Middletown Township,* 11 Pa. Commw. 574, 314 A.2d 524 (1974).

In view of our finding we need not address the argument of economic duress asserted by plaintiff. As a practical matter, defendant was obligated to impose the rates it did in order to maintain uniformity with all of the rest of its customers. Whatever economic situation plaintiff may have found itself in at the time it entered into the two contracts with defendant, that condition was not caused or created in

any way by any actions of defendant. See *Litten v. Jonathan Logan Inc.* 220 Pa. Super. 274, 286 A.2d 913 (1971).

One passing word in conclusion. As previously noted, defendant has never billed plaintiff for any of the living units which were not occupied. In this case defendant counterclaims for the sewer rates not billed for those units but concedes that it would only be entitled to such counterclaim in the event that we should find that its agreements with plaintiff are void. Having not so found, it is clear that the counterclaim of defendant must likewise fail.

## ORDER

And now, this June 26, 1984, it is hereby ordered that a verdict in favor of defendant and against plaintiff be entered and plaintiff's complaint dismissed. It is further ordered that with regard to defendant's counterclaim a verdict be entered in favor of plaintiff and against defendant.

GARB, *J.,* May 27, 1986 — Plaintiffs have filed post-trial motions as a result of our order entering a verdict in favor of defendant seeking either judgment n.o.v., or a new trial. The case was tried, nonjury, before the undersigned.

This is an action, challenging the sewer rates charged by defendant under section 306B(h) of the Municipality Authorities Act as most recently amended by the act of November 26, 1978, P.L. 1399, 330, §802(a), 53 P.S. §306B(h). As we stated in our original opinion and order, our review of a rate resolution is limited to a determination of whether or not there has been a manifest and flagrant abuse of discretion or an arbitrary establishment of the rate system. The burden is on plaintiff

to prove that the authority abused its discretion by establishing a rate system which was either unreasonable or lacking in uniformity. *Patton-Ferguson Joint Authority v. Hawbaker,* 14 Pa. Commw. 402, 332 A.2d 783 (1974).

Plaintiffs contend that they have demonstrated that the rates set by defendant were unreasonable and constituted a flagrant abuse of discretion. In this review of the record, we will not reiterate the facts which were set forth at some length in our original opinion. Suffice it to say, for present purposes, that plaintiffs operate an establishment consisting of 220 residential units, each of which is totally integrated, together with a nursing facility of 82 beds as well as a community center including a dining room, barber shop, beauty salon, coffee shop, and various other shops and amenities. All of the foregoing is operated under one roof. The 220 residential units are rented individually as unfurnished living units and were advertised and rented as apartment units. The authority applied a flat rate sewer charge on each of the 220 residential units, but only upon those which are occupied. The sewer rates applied to the nursing facility and community center are based upon water meter rates. Therefore, we found that plaintiffs' operation consists of a combination of both a residential and a commercial use. The nursing facility is licensed by the commonwealth for that purpose, while the residential units are not licensed in any way. The evidence established that defendant applies rates across the board to all of its customers in the same manner, to wit, a flat rate to residential users and a meter rate to commercial usage. Therefore, we found then and believe now, that there is no lack of uniformity in the application of the rates by defendant to plaintiffs' establishment.

Plaintiffs contend that their establishment is unique and therefore no basis upon which to determine uniformity. We believe that this begs the question. If, in fact, this establishment is unique, then there is no basis upon which a lack of uniformity can be found. However, we do not believe that the establishment is unique for purposes of determining uniformity and comparing it to the imposition of rates by defendant upon other customers. We are satisfied that our determinations that the imposition of rates by defendant was reasonable, uniform and not a manifest and flagrant abuse of discretion was correct. By the same token, of course, we are satisfied that it was not arbitrary.

Plaintiffs likewise contend that we erred in finding that they were not subjected to economic duress in entering into two separate contracts with defendant regarding the rates to be applied. As noted in our opinion, these agreements were entered into on December 1, 1976, and again in February 1978. Those agreements, essentially, incorporated the rates as fixed by defendant which are in contest herein. As we decided then, we are not convinced that there is any occasion to address the question of duress because we are satisfied that the rates were uniformly and reasonably applied regardless of the agreements entered into. Furthermore, we would note that the assertions of duress apply to the time during which the agreement of December 1, 1976, was negotiated and signed. Those matters, having to do with the financial distress with which plaintiffs allegedly encountered in completing the project, no longer applied in February 1978, when the second agreement was entered into. Therefore, if nothing more, we believe that plaintiffs ratified the earlier contract by the later one. See *National Auto*

*Brokers v. Aleeda Corporation,* 243 Pa. Super. 101, 364 A.2d 470 (1976).

In any event, we are satisfied that the evidence in this case dispels any contention of economic duress which would cause these contracts to be voidable. Duress for this purpose is that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity of apprehension to overcome the mind of a person of ordinary firmness. Where persons deal with each other on equal terms and at arm's length, there is a presumption that the person alleging duress possesses ordinary firmness. Moreover, in the absence of threats of actual bodily harm, there can be no duress where the contracting party is free to consult with counsel. *Carrier v. William Penn Broadcasting Company,* 426 Pa. 427, 233 A.2d 519 (1967).

Business compulsion can be a type of duress for this purpose. The important elements in the application of the doctrine of economic duress or business compulsion are that there exists such pressure of circumstances which compels the injured party to execute an agreement involuntarily or against his will which results in economic loss, and the injured party does not have an immediate remedy. *Litten v. Jonathan Logan Inc.,* 220 Pa. Super. 274, 286 A.2d 913 (1971). Moreover, and of utmost importance here, it was stated in *National Auto Brokers v. Aleeda Corp.,* supra:

"We also specifically noted that a determinative factor in the case was that the state of financial distress which compelled plaintiff's execution of the 1961 agreement was *created by defendant.* We held that '(i)n the instant case, the final and potentially fatal blow was prepared by defendant, which by its

alternative but to sign the contract as written.' " *Litten v. Jonathan Logan Inc.,* supra, at 282, 286 A.2d at 917 (emphasis in original).

In this regard, it was held in *Young v. Pileggi,* 309 Pa. Super. 565, 455 A.2d 1288 (1983):

"Moreover, it was long ago held that a contract signed because a party is in pressing financial circumstances and subject to embarassment, *where the other party is not responsible for those circumstances and did not create the embarassment,* is not an adequate basis on which to avoid the contract. (citation omitted).

"In short, '(b)usiness compulsion is not established merely by proof that consent was secured by the pressure of financial circumstances or by the fact that one party insisted upon a legal right and the other party yielded to such insistence.' " 25 Am. Jur. 2d Duress and Undue Influence, section 7. (emphasis supplied).

The record in this case clearly establishes that defendant had nothing to do with the economic distress in which plaintiffs found themselves at the time of execution of the first contract. Their difficulties were between themselves and their financing institutions and their need to begin the project as speedily as possible. Defendant was foreign to those transactions.

Therefore, even if the question of duress were relevant to those proceedings, the record fails to establish such duress as would permit plaintiffs to void their contractual obligations.

For the foregoing reasons, we dismiss plaintiffs' post-trial motions.

## ORDER

And now, this May 27, 1986, it is hereby ordered that plaintiffs' post-trial motions are denied, dismissed and overruled.