J-S56035-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| QVC, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CREATIVE OUTDOOR DISTRIBUTORS | : | |
| USA, INC. D/B/A CREATIVE | : | |
| OUTDOOR DIST., INC. AND BRIAN | : | No. 1348 EDA 2019 |
| HOROWITZ | : | |
| | : | |
| Appellants | : | |

Appeal from the Judgment Entered March 15, 2019
In the Court of Common Pleas of Chester County Civil Division at No(s):
2016-01727-MJ

BEFORE: PANELLA, P.J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    Filed: November 5, 2020

Appellants Creative Outdoor Distributors USA, Inc., doing business as

Creative Outdoor Dist., Inc., and Brian Horowitz, appeal from the judgment

entered on March 15, 2019, in favor of Appellee QVC, Inc., following a bench

trial.[1]  Appellants contend the trial court erred by construing the contract at

issue as permitting Appellee to unilaterally revoke its purchase order and

imposed contractual obligations on Appellee.  For the reasons set forth below,

we affirm.

We agree with the facts set forth in the trial court's opinion.  Trial Ct.

Op., 9/6/18, at 2-11.  In 2016, Appellee sued Appellants for breach of contract

_____

[1] We may refer to the individual Appellants as necessary for clarity.

of the Promissory Note under one docket number (2016 case). In 2017, Appellants sued Appellee for breach of contract of PO 853360 under a different docket number (2017 case). Eventually, Appellee filed an unopposed motion to consolidate the two cases, which the trial court granted by ordering that the two dockets were consolidated and the lead docket for filing purposes was the 2016 case. Order, 5/24/17.

In the 2016 case, on September 6, 2018, the trial court entered an order in favor of Appellee resolving all claims in the 2016 and 2017 cases and awarding damages in the amount of $354,420.22. The order provided, however, that Appellee was to file a petition for attorneys' fees and costs and "[t]hereafter, the court will enter a **final order**." Order, 9/6/18 (emphasis added). The trial court resolved Appellee's petition for attorneys' fees and costs on January 15, 2019, and entered an order revising the prior amount to $537,208.62, which included the original amount awarded, attorneys' fees of $177,210, and $5,578.40 in costs.

On January 25, 2019, Appellants filed their post-trial motion, requesting judgment notwithstanding the verdict. Appellants' Post-Trial Mot., 1/25/19, at 2 (requesting "that the order of January 15, 2019 be modified and changed to reflect judgments in no amount."). On March 14, 2019, the trial court denied Appellants' post-trial motion.

On March 15, 2019, Appellee filed a praecipe to enter judgment. The caption of the praecipe listed the docket number for the 2016 case and stated

that it was consolidated with the docket number for the 2017 case. The trial court entered judgment at the 2016 case. The 2017 case docket reflects no entry of judgment.

On April 12, 2019, Appellants timely appealed, but the trial court did not order Appellants to comply with Pa.R.A.P. 1925(b). On June 11, 2019, the trial court filed a Pa.R.A.P. 1925(a) opinion incorporating by reference its prior orders. Pa.R.A.P. 1925(a) Op., 6/11/19, at 1 (unpaginated).

We initially address Appellants' decision to file a single notice of appeal listing both docket numbers in the 2016 case. This Court issued a rule to show cause as to why the appeal should not be quashed under ***Commonwealth v. Walker***, 185 A.3d 969 (Pa. 2018), because our Supreme Court has mandated "that when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed. The failure to do so will result in quashal of the appeal." ***Walker***, 185 A.3d at 977 (footnote omitted); ***see also*** Order, 5/31/19.

In response, Appellants argued that they did not have to file a separate notice of appeal in the 2017 case because no judgment was entered in the 2017 case. Appellants' Resp. to Rule to Show Cause, 6/10/19. Attached to their response was the docket for the 2017 case, which included docket entries that the 2017 case was "consolidated for all purposes" at the 2016 case. ***Id.*** at Ex. C. The 2017 case docket does not reflect any entry of judgment, but does reflect the entry of "closed consolidated case – docket on other case."

*Id.* (formatting altered). We add that the 2016 case docket reflects a status of "notice to transfer to appellate court." R.R. at 1a.[2] On June 12, 2019, this Court discharged the rule and referred the issue to this panel.

Initially, we address Appellants' decision to file a single notice of appeal listing both docket numbers, but filed only in the 2016 case, and not in the 2017 case. Recently, in ***2303 Bainbridge, LLC v. Steel River Bldg. Sys., Inc.***, ____ A.3d ____, 2020 WL 5243220 (Pa. Super. 2020) (***Bainbridge***), the appellant appealed from an order consolidating three cases. ***Bainbridge***, 2020 WL 5243220 at *1. The appellant filed a single notice of appeal listing all three docket numbers. *Id.* at *1 n.1.

The ***Bainbridge*** Court addressed whether it had jurisdiction to entertain the appeal under ***Commonwealth v. Walker***, 185 A.3d 969 (Pa. 2018), because the appellant "included all three docket numbers in its single notice of appeal . . . ." *Id.* The ***Bainbridge*** Court noted that the "final entries in the two [other] consolidated dockets state, 'Disposed by Consolidation' and, in the status entry they state '6-Closed,' whereas the lead consolidated docket from which this appeal is taken states '2-Open.'" *Id.* The ***Bainbridge*** Court also observed that "the concerns present in ***Walker*** are not present here: there are not multiple defendants, the facts and issues apply only to one

---

[2] We may cite to the reproduced record for the parties' convenience.

appellant, and the outcome will affect only one appellant." *Id.* Accordingly, the *Bainbridge* Court declined to quash. *Id.*

Here, Appellants filed a single notice of appeal listing the consolidated docket numbers at one docket, similar to the appellant in *Bainbridge*, who filed a single notice of appeal listing the consolidated docket numbers. *Cf. id.* Also similar to *Bainbridge*, the instant 2017 case docket states that it is a "closed consolidated case," with the active docket at the 2016 case. *See id.* The status entry of the 2016 docket, although not stating it is "open" similar to the docket at issue in *Bainbridge*, reflects it is on appeal to this Court. *Cf. id.* Unlike the single defendant in *Bainbridge*, Appellants comprise multiple parties, but the parties in the 2016 and 2017 cases are identical. *Cf. id.* Further, the facts and issues of the 2016 and 2017 cases essentially apply to Appellants, and not distinct, independent defendants. *Cf. id.* Accordingly, similar to the *Bainbridge* Court, we also decline to quash Appellants' appeal.

Having resolved that Appellants' appeal is properly before us, we turn to Appellants' issues:

> 1. Whether the trial court erred in determining that the terms of the contract between [Appellee] and [Appellants] allowed [Appellee] to unilaterally revoke its purchase order.
>
> 2. Whether the trial court erred in determining that [Appellee's] contract with [Appellants] did create obligations on [Appellee] concerning letters of credit.

Appellants' Brief at 3.[3]

We summarize Appellants' arguments in support of both of their issues together. Appellants argue that Appellee "sued on the promissory note and personal guaranty as if they stood alone." *Id.* at 14. In Appellants' view, the promissory note referred "to the issuance of the purchase orders and to the letters of credit to be connected to each one." *Id.* at 14-15. In Appellants' view, these "multiple documents are part of a single transaction." *Id.* at 15. Appellants also argue that Appellee had a contractual obligation under these documents to not interfere with the issuance of any letters of credit to Appellants. *Id.* at 22-23.

Next, Appellants summarize the law addressing ambiguous contracts, *id.* at 17-19, and then quote the clause at issue in PO 853360: "This is an adjustable/cancelable order. Do not ship until you speak to your buyer. Colors may need to be adjusted prior to shipping." *Id.* at 19. In Appellants' view, the trial court only construed the first two sentences of the clause at issue. *Id.* Appellants argue that the first two sentences are ambiguous and "[o]nly by reading the third sentence is ambiguity removed." *Id.* Appellants claim that the third sentence establishes that Appellee could adjust the colors

---

[3] Appellants' brief does not comply with the Rules of Appellate Procedure, including Pa.R.A.P. 2119(a), which requires that the "argument shall be divided into as many parts as there are questions to be argued." Pa.R.A.P. 2119(a). Here, although Appellants raised two issues, their argument section has five parts.

or other parts of the ordered item, but "did not have the prerogative to cancel the entire order. The more specific and immediately contiguous language clarifies the generalizations which precede it." *Id.* at 22.

We state the standard of review as follows:

> [o]ur appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law.

*Amerikohl Mining Co. v. Peoples Nat. Gas Co.*, 860 A.2d 547, 549-50 (Pa. Super. 2004) (citations omitted and formatting altered).

With respect to reviewing an order resolving a post-trial motion for judgment notwithstanding the verdict, the standard of review follows:

> An appellate court will reverse a trial court's grant or denial of a JNOV only when the appellate court finds an abuse of discretion or an error of law. Our scope of review with respect to whether judgment n.o.v. is appropriate is plenary, as with any review of questions of law.
>
> In reviewing a motion for judgment n.o.v., the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor. Moreover, a judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner. Further, a judge's appraisement of evidence is not to be based on how he would have voted had he been a member of the jury, but on the facts as they come through the sieve of the [fact-finder's] deliberations.

\* \* \*

- 7 -

> Questions of credibility and conflicts in the evidence are for the fact-finder to resolve and the reviewing court should not reweigh the evidence. If there is any basis upon which the fact-finder could have properly made its award, the denial of the motion for judgment n.o.v. must be affirmed.

**Braun v. Wal–Mart Stores, Inc.**, 24 A.3d 875, 890-91 (Pa. Super. 2011)

(*per curiam*) (citations omitted and formatting altered).

> In construing a contract, we are guided by the following:

> In interpreting the language of a contract, we attempt to ascertain the intent of the parties and give it effect. When the words of an agreement are clear and unambiguous, the intent of the parties is to be ascertained from the language used in the agreement, which will be given its commonly accepted and plain meaning. Additionally, in determining the intent of the contracting parties, all provisions in the agreement will be construed together and each will be given effect. Thus, we will not interpret one provision of a contract in a manner which results in another portion being annulled.

**LJL Transp., Inc. v. Pilot Air Freight Corp.**, 962 A.2d 639, 647-48 (Pa.

2009) (citations omitted).

> Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. . . .

> Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. In the absence of an ambiguity, the plain meaning of the agreement will be enforced. The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

***Murphy v. Duquesne Univ. of the Holy Ghost***, 777 A.2d 418, 429-30 (Pa. 2001) (citations omitted and formatting altered).

After careful consideration of the record, the parties' briefs, and the trial court's opinion, we adopt the trial court's opinion, which held that Appellants are due no relief. We agree with the trial court that the promissory note and guaranty only imposed an obligation on Appellants to pay a debt to Appellee. ***See*** Trial Ct. Op. at 23. Appellee did not execute either document and therefore had no contractual obligations under either document to Appellants. ***See id.***; ***see generally LJL Transp.***, 962 A.2d at 647-48 (explaining that the **contracting** parties' intent is to be construed from the contractual language). Therefore, the trial court correctly rejected Appellants' argument that the purchase orders, including PO 853360, must be construed with the promissory note and guaranty as a single document. ***See*** Trial Ct. Op. at 23. Further, PO 853360 states on its face that it is a cancelable purchase order. ***See id.*** at 21-22 (explaining that PO 853360 is unambiguously a cancellable order and that witnesses credibly testified that they discussed with Appellants that the order at issue was cancellable); ***see generally Murphy***, 777 A.2d at 429-30. Accordingly, because Appellants did not establish any trial court error, we affirm the judgment below.

Judgment affirmed.

President Judge Panella joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/5/20

Filed 5/27/2019 12:09:00 PM Superior Court Eastern District
1348 EDA 2019

*Filed and Attested by
PROTHONOTARY
06 Sep 2018 12:53 PM
J. Miller*

QVC, INC.,

    Plaintiff/Counterclaim-Defendant

v.

CREATIVE OUTDOOR DISTRIBUTORS
USA, INC. d/b/a CREATIVE OUTDOOR
DIST., INC. and BRIAN HOROWITZ,

    Defendants/Counterclaim-Plaintiffs

COURT OF COMMON PLEAS
CHESTER COUNTY

CIVIL ACTION
CASE NO. 16-01727-MJ

CONSOLIDATED WITH
CASE NO. 17-02629-CT

## DECISION

This action involves competing claims for breach of contract arising out of a soured business relationship between electronic media retailer, QVC, Inc. ("QVC"), and its former vendor, Creative Outdoor Distributors USA, Inc. ("Creative Outdoor"), and its Chief Executive Officer, Brian Horowitz ("Horowitz").

In the action titled, *QVC, Inc. v. Creative Outdoors Distributors, USA, Inc. and Brian Horowitz*, Docket No. 2016-01727, QVC alleges that Creative Outdoor failed to make payments due under the terms of a promissory note (the "Promissory Note") it executed resulting in an event of default. QVC seeks to recover the sums due and owing under the Promissory Note as a result of the breach. QVC further contends that Horowitz committed his own breach of a contract when he failed to pay the amounts due and owing under the Promissory Note as he was obligated to do pursuant to a Guaranty (the "Guaranty") he executed in connection with QVC's issuance of the Promissory Note.

Creative Outdoor and Horowitz, as plaintiffs, sued QVC in the action titled, *Creative Outdoors Distributors, USA, Inc. and Brian Horowitz v. QVC, LLC.*, Docket No. 2017-02629. Creative Outdoor alleges therein that QVC is liable for its own breach of contract. It contends

that QVC committed a breach of contract when it failed to purchase goods from Creative Outdoor in accordance with a written purchase order and when it delayed issuing letters of credit pursuant to the Promissory Note. Creative Outdoor also asserts a claim for intentional interference with existing business relationships stemming from QVC's alleged interference with Creative Outdoor's business with QVC affiliates.

By Orders of May 24, 2017 and June 1, 2017, the court consolidated these matters for purposes of discovery and trial. The non-jury trial of these matters began on August 14, 2018 and concluded on August 16, 2018. Based upon the evidence presented at trial, the court finds in favor of QVC and against Creative Outdoor and Horowitz, joint and severally, in the amount of $354,420.22 together with attorneys' fees and costs in *QVC, Inc. v. Creative Outdoors Distributors, USA, Inc.*, Docket No. 2016-01727. The court finds against Creative Outdoor and Horowitz and in favor of QVC in *Creative Outdoors Distributors, USA, Inc. and Brian Horowitz v. QVC, LLC.*, Docket No. 2017-02629. In so doing, the court makes the following:

## FINDINGS OF FACT

### A. The Parties

1. QVC is a corporation organized and existing under the laws of the State of Delaware with offices located at Studio Park, 1200 Wilson Drive, West Chester, Pennsylvania 19380.

2. QVC is an electronic merchandise retailer and, through a number of means and media, including television, markets a wide variety of products directly to consumers.

3. Creative Outdoor is a corporation organized and existing under the laws of the State of Delaware with offices located at Suite 1E #525, 26741 Portola Parkway, Foothill Ranch, California 92610.

-2-

4. Creative Outdoor designs, markets and distributes consumer goods, including outdoor products, such as those utilized for camping.

5. Horowitz is an adult individual residing in the State of California with a business address located at Suite 1E #525, 26741 Portola Parkway, Foothill Ranch, California 92610. Horowitz is the Chief Executive Officer of Creative Outdoor and the owner of some or all of the equity interest in Creative Outdoor. (Ex. P-2).

6. Robert Ohrn (Ohrn) is a former QVC employee who is now a marketing representative through Eaglesun, Inc., a corporation.

7. In 2014, Ohrn approached Horowitz about selling Creative Outdoor's products through QVC and Horowitz agreed to pursue the business.

8. Ultimately, QVC decided to purchase one of Creative Outdoor's products, a small collapsible wagon with rubber wheels, a metal frame, and a fabric bed and sides, for sale on television during its 2015 season.

**B. The Promissory Note**

9. As of October 5, 2015, Creative Outdoor owed to QVC the Principal Sum of $545,109.34 (the "Principal Sum"). (Ex. P-2, 12).

10. The Principal Sum, and Creative Outdoor's indebtedness to QVC in the amount of the Principal Sum, was acknowledged in a promissory note (the "Promissory Note").

11. Creative Outdoor executed the Promissory Note on October 19, 2015. It identified Creative Outdoor as maker and QVC as payee. (Ex. P-1).

12. QVC is the holder of the Promissory Note.

13. The Promissory Note set forth the manner in which Creative Outdoor would repay the Principal Sum. (Ex P-1, ¶ 11).

-3-

14.    Pursuant to the Promissory Note, Creative Outdoor was to make the following installment payments totaling $150,712.54:

| | |
|---|---|
| October 27, 2015 | $5,000.00 (together with any and all unpaid Late Charges [as defined below] and Collection Costs [as defined below]) |
| November 16, 2015 | $5,000.00 (together with any and all unpaid Late Charges [as defined below] and Collection Costs [as defined below]) |
| December 15, 2015 | $10,000.00 (together with any and all unpaid Late Charges [as defined below] and Collection Costs [as defined below]) |
| January 15, 2016 | $30,000.00 (together with any and all unpaid Late Charges [as defined below] and Collection Costs [as defined below]) |
| February 16, 2016 | $30,000.00 (together with any and all unpaid Late Charges [as defined below] and Collection Costs [as defined below]) |
| March 15, 2016 | $30,000.00 (together with any and all unpaid Late Charges [as defined below] and Collection Costs [as defined below]) |
| April 15, 2016 | $30,000.00 (together with any and all unpaid Late Charges [as defined below] and Collection Costs [as defined below]) |
| May 16, 2016 | $10,712.54 (together with any and all unpaid Late Charges [as defined below] and Collection Costs [as defined below]) |

(Ex. P-1, ¶ 11(b)).

15.    In addition, the Promissory Note provided an opportunity for Creative Outdoor to pay the balance of the Principal Sum ($394,396.80) through a 35% price reduction from the value of certain open purchase orders previously issued by QVC for folding wagons and other outdoor products. (Ex. P-1, ¶ 11). The purchase orders were as follows.

-4-

16. On September 3, 2015, QVC issued Purchase Order number 850410 ("PO 850410"), for the purchase and delivery of merchandise described as "Creative Outdoor High Back Chair with Lumbar Support," and further identified as QVC SKN M48893 (the "M48893 Merchandise") (Ex. P-14).

17. On September 3, 2015, QVC also issued Purchase Order number 848991 ("PO 848991"), for the purchase and delivery of merchandise described as "Creative Outdoor 3-Person Loveseat with Cup Holders," and further identified as QVC SKN M48801 (the "M48801 Merchandise"). (Ex. P-15).

18. On October 2, 2015, QVC issued Purchase Order number 850767 ("PO 850767"), for the purchase and delivery of merchandise described as "Creative Outdoor All-Terrain Folding Wagon with Dividers," and further identified as QVC SKN M48802 (the "M48802 Merchandise"). (Ex. P-16).

19. The Purchase Orders were conditionally issued, pending QVC approval of what is known as a first-piece "quality assurance" ("QA") sample. (*See e.g.* Ex. P-14).

20. Creative Outdoor never submitted a first-piece QA sample for PO 850410 and 848991, and thus the orders were never finalized.

21. The Merchandise reflected in PO 850767 did receive first-piece QA sample approval and PO 850767 was finalized. Following delivery by Creative Outdoor of the M48802 Merchandise, QVC retained and applied 35% of the amounts due to Creative Outdoor to the debit, and paid the remaining amounts to Creative Outdoor. (Ex. P-12).

22. On October 2, 2015, QVC also issued Purchase Order number 853360 ("PO 853360"), for the purchase and delivery of additional M48802 Merchandise. (Ex. P-17).

-5-

23.     PO 853360 stated it was an "Adjustable/Cancelable Order." It further stated: "THIS IS AN ADJUSTABLE/CANCELABLE PURCHASE ORDER. DO NOT SHIP UNTIL YOU SPEAK TO YOUR BUYER." (Ex. P-17).

24.     The first installment payment under the Promissory Note, in the amount of $5000.00, was due on or before October 27, 2015. (Ex. P-1, ¶ 11(b)).

25.     Creative Outdoor remitted this installment payment approximately five (5) weeks late – on or around December 2, 2015. (Ex. P-12).

26.     Creative Outdoor's failure to timely remit this installment amount and its failure to remit the payment within five (5) Business Days (as defined by the Promissory Note) of when due, gave rise to a late charge in the amount of $250.00. (Ex. P-1, ¶ 13).

27.     The second installment payment under the Promissory Note, in the amount of $5000.00, was due on or before November 16, 2015. (Ex. P-1, ¶ 11(b)).

28.     Creative Outdoor remitted this installment payment approximately four (4) weeks late – on or around December 16, 2015. (Ex. P-12).

29.     Creative Outdoor's failure to timely remit this installment amount, and failure to remit the payment within five (5) Business Days (as defined by the Promissory Note) of when due, gave rise to a late charge in the amount of $250.00. (Ex. P-1, ¶ 13).

30.     The third installment payment under the Promissory Note, in the amount of $10,000.00, was due on or before December 15, 2015. (Ex. P-1, ¶ 11(b)).

31.     On or about December 21, 2015, Creative Outdoor remitted $5000.00, and on or about December 23, 2015, Creative Outdoor remitted the remaining $5000.00 due on the third installment. (Ex. P-12).

32.     Creative Outdoor's failure to timely remit this installment amount, and failure to remit $5000.00 of the $10,000.00 payment within five (5) Business Days (as defined by the Promissory Note) of when due, gave rise to a late charge in the amount of $250.00. (Ex. P-1, ¶ 13).

33.     On December 21, 2015, Creative Outdoor paid $1000.00 for late charges that had accrued for the untimely remittance of the October, November and December installments. (Ex. P-12). Creative Outdoor, however, only owed $750 in late charges to that point.

34.     The fourth installment payment under the Promissory Note, in the amount of $30,000.00, was due on or before January 15, 2016. (Ex. P-1, ¶ 11(b)).

35.     Creative Outdoor remitted to QVC only $5000.00 of the installment payment of $30,000.00 due and owing on January 15, 2016. (Ex. P-12). The balance of $25,000.00 due and owing to QVC on January 15, 2016 was not paid within five (5) days thereof or any date thereafter, thus giving rise to a "Late Charge" (as defined in the Promissory Note) in the amount of $1250.00 (5% of the $25,000 balance). (Ex. P-1).

36.     The fifth installment payment under the Promissory Note, in the amount of $30,000.00, was due on or before February 16, 2016. (Ex. P-1, ¶ 11(b)).

37.     Creative Outdoor failed to remit to QVC the installment payment of $30,000.00 due and owing on February 16, 2016 pursuant to the terms of the Promissory Note, either on such date or at any time thereafter, thereby giving rise to an Event of Default under the terms of the Promissory Note. (Ex. P-1¶¶ 13, 16 & 17).

38.     Creative Outdoor's failure to timely remit this installment amount, and failure to remit the payment within five (5) Business Days (as defined by the Promissory Note) of when due, gave rise to a late charge in the amount of $1,500.00. (Ex. P-1, ¶ 13).

-7-

39. The sixth installment payment under the Promissory Note, in the amount of $30,000.00, was due on or before March 15, 2016. (Ex. P-1, ¶ 11(b)).

40. Creative Outdoor failed to remit to QVC the installment payment of $30,000.00 due and owing on March 15, 2016 pursuant to the terms of the Promissory Note, either on such date or at any time thereafter. (Ex. P-1,¶¶ 13, 16 & 17).

41. Creative Outdoor's failure to timely remit this installment amount, and failure to remit the payment within five (5) Business Days (as defined by the Promissory Note) of when due, gave rise to a late charge in the amount of $1500.00. (Ex. P-1, ¶ 13).

42. QVC did not elect to declare an Event of Default until March 25, 2016.

43. On March 25, 2016, QVC did declare an Event of Default under the Promissory Note for Creative Outdoor's failure to pay the installment payments as set forth in the Promissory Note. (Ex. P-11).

44. As of March 25, 2016, $266,684.90 was due and owing by Creative Outdoor to QVC. (Ex. P-12; Ex. P-11). This amount represented the amount of the Principal Sum, together with debits and credits that were applied to Creative Outdoor's vendor account after October 17, 2015 and before March 25, 2016 in accordance with the terms of the parties' purchase orders and the Promissory Note, plus interest for late Promissory Note payments, as follows:

| Date(s) | Description | Amount |
|---|---|---|
| October 19, 2015 | "Principal Sum" | $545,109.34 |
| Oct. 20, 2015, Nov. 24 2015, Dec. 23, 2015, Jan. 12, 2015 and Feb. 24, 2016 | Import Cost Repayments | ($69,346.20) |

| Date(s) | Description | Amount |
|---|---|---|
| Nov. 29, 2015, Dec. 27, 2015, Jan. 17, 2016, Mar. 27, 2016 and Mar. 30, 2016 | Customer Returned Merchandise sent back to Creative Outdoor | $4,071.76 |
| Dec. 3, 3015 (due Oct. 27, 2015) Dec. 16, 2015 (due Nov. 16, 2015) Dec. 23, 2015 (due Dec. 16, 2015) Jan. 10, 2015 (due Jan. 15, 2016) | Promissory Note Payments | ($25,000.00) |
| Feb. 2, 2016 | Promissory Note Payment (deducted from letter of credit for PO 850767 | ($175,350.00) |
| Feb. 2, 2016 | Promissory Note Payment (deducted from letter of credit for PO 854715) | ($16,800) |
| **Sub-Total as of March 25, 2016** | | **$262,684.90** |
| | Unpaid Interest on Late Promissory Note Payments | $4250.00 |
| **Total as of March 25, 2016** | | **$266,934.90** |

(Ex. P-11, 12).

### The Guaranty

45. As a condition to QVC's agreement to the payment and remittance of the Principal Sum by Creative Outdoor in accordance with the terms of the Promissory Note, Horowitz executed and delivered a guaranty and suretyship agreement (the "Guaranty").

46. Horowitz as the guarantor and surety guaranteed the payment and performance of Creative Outdoor's obligations under the Promissory Note. (Ex. P-2).

47. Creative Outdoor was to make eight (8) installment payments that were to be received by QVC no later than the scheduled date upon which such payment was due. (Ex. P-1, ¶¶ 1 & 8).

48.   Creative Outdoor failed to timely remit the payments due on October 27, 2015, November 16, 2015, and December 15, 2015.  (Ex. P-12).

49.   Creative Outdoor remitted only $5000.00 of the $30,000.00 installment due on January 15, 2016 and failed to pay the remaining balance within five (5) business days thereafter. (*Id*). Creative Outdoor did not remit any of the February, March, April or May installment payments.  (*Id*).

50.   On March 25, 2016, QVC demanded immediate payment of the entire amount of the Principal Sum, which after application of all credits due to Creative Outdoor, was no less than $266,934.90, including unpaid Late Charges.  (Ex. P-11, 12).

51.   Creative Outdoor failed to remit these amounts to QVC.

52.   Creative Outdoor eventually paid the amounts due in October, November and December 2015, but its failure to do so in a timely fashion resulted in late charges, as provided in the Promissory Note, as set forth below:

| Payment Due Date | Late Charge Incurred |
| --- | --- |
| October 27, 2015 | $250.00 |
| November 16, 2015 | $250.00 |
| December 15, 2015 | $250.00 |
| Jan. 15, 2016 | $1250.00 |
| Feb. 16, 2016 | $1500.00 |
| Mar. 15, 2016 | $1500.00 |
| Payment by Creative Outdoor | ($1000.00) |
| Total | $4000.00 |

(Ex. P-1, ¶ 13)

53.   Pursuant to the terms of the Guaranty, specifically paragraphs 3 and 7, on March 25, 2016, QVC demanded immediate payment from Horowitz, as Guarantor, of the entire amount of the Principal Sum, which after application of all credits due to Creative Outdoor, was no less than $266,934.90, including unpaid Late Charges. (Ex. P-11).

54.   Horowitz failed to remit these amounts to QVC.

## DISCUSSION

### Creative Outdoor breached its contract, the Promissory Note, with QVC.

In order to recover on a claim for breach of contract under Pennsylvania law, a party must prove: (1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) resultant damages. *See Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 716 (Pa. Super. 2005). At trial, QVC provided credible evidence to satisfy each of the required elements and established its claim for breach of contract.

As an initial matter, Creative Outdoor does not dispute its failure to pay the sums due and owing under the Promissory Note. Thus, the court need not discuss further the second element of QVC's claim, *i.e.* breach. Rather, the court will direct its attention to the challenges Creative Outdoor raised at trial to the validity of the contract itself and QVC's alleged damages.

Although it acknowledges the existence of the Promissory Note and its execution thereof, Creative Outdoor contends that the Promissory Note was a valid contract from the outset. According to Creative Outdoor, its asserted defense of "economic duress" invalidates the Promissory Note and its obligations thereunder. The court finds that Creative Outdoor failed to carry its burden of proof with regard to the defense of economic duress and that the Promissory Note was a valid and enforceable contract.

-11-

Under Pennsylvania law, a contract may be rendered voidable due to economic duress or business compulsion. *Nat'l Auto Brokers Corp. v Alleeda Develop. Corp.*, 243 Pa. Super. 101, 111, 364 A.2d 470, 473 (1976). The economic duress defense, as it has come to be known, requires a defendant to show that at the time of the contract's execution (1) serious economic injury was imminent, (2) circumstances compelled the defendant to involuntarily execute an agreement that resulted in economic loss, and (3) defendant did not have an immediate legal remedy as a viable alternative to executing the agreement. *Id.* at 473; *Litten v Jonathan Logan, Inc.*, 220 Pa. Super. 274, 286 A.2d 913 (1971). However, "business compulsion' it not established "merely by proof that consent was secured by the pressure of financial circumstances." *Nat'l Auto*, 243 Pa. Super. at 110, 364 A.2d at 474. "To constitute duress or business compulsion there must be more than a mere threat which might possibly result in injury at some future time, such as a threat of injury to credit in the indefinite future." *Id.* In order to best understand Creative Outdoor's economic duress defense, a brief discussion of the parties' business relationship prior to the execution of the Promissory Note is warranted.

Horowitz testified that in late 2014 after experiencing success selling its products with another electronic media retailer, Creative Outdoor and its vendor representative, Robert Ohrn, began discussions with QVC's lawn and garden buyers about the sale of Creative Outdoor's collapsible, big wheel wagons to QVC's customers. The result of the discussions was that QVC issued orders for the purchase and delivery of the wagons (the "Initial Purchase Orders"). Later, in the summer of 2015, discussions began between the parties for the purchase of additional products by QVC.

Horowitz testified it was at that point, prior to the issuance of any purchase orders or commitments by QVC on quantities or price, that Creative Outdoor commenced the production

-12-

of additional wagons. It did so, Horowitz testified, because the company wanted to get a jump start on supplies and manufacturing overseas. He stated the company wanted to avoid having to compete with other businesses for manufacturing time during the busy end of the year period.

At the same time, the parties continued to process the existing purchase orders. Pursuant to the terms of the Initial Purchase Orders, in September and October 2015, QVC exercised its right to return to Creative Outdoor for a full credit or refund certain unsold merchandise (the "Sale or Return Merchandise"). (Exs. P-27-33). The return of these items to Creative Outdoor gave rise to a credit or refund due by Creative Outdoor to QVC, calculated as the cost price of the Sale or Return Merchandise multiplied by the number of units returned. Pursuant to the Initial Purchase Order terms and conditions, QVC also returned to Creative Outdoor $3,966.00 of merchandise which had been sold to its customers and then returned to QVC. (Ex. P-12). The effect was that as of October 5, 2015, Creative Outdoor owed to QVC the Principal Sum of $545,109.34. It was this financial situation that Creative Outdoor found itself in October, 2015 which forms the basis for its claim of economic duress.

Creative Outdoor, however, failed to present any credible evidence that (1) imminent economic injury was about to befall it at the time it executed the Promissory Note or (2) QVC forced it to execute the Promissory Note resulting in an economic loss. Rather, the only evidence presented at trial on these issues was the testimony of Creative Outdoor's CEO, Brian Horowitz. Yet Horowitz's testimony amounted only to generalized statements such that at the time he executed the Promissory Note on Creative Outdoor's behalf, the company "was all in" having decided to begin production on orders contemplated, but not yet finalized between the parties. Creative Outdoor failed to present the court with any evidence about Creative Outdoor's financial status in the fall of 2015, whether assets, working capital, liabilities or anything of the

-13-

sort. The court had nothing before it with which to conclude that economic injury was imminent for Creative Outdoor.

Likewise, there was no evidence presented that anyone at QVC "forced" Creative Outdoor to execute the Promissory Note. No evidence was presented that QVC improperly pursued Creative Outdoor's business or threatened any action against Creative Outdoor regarding its outstanding debt. Rather, it was clear from the evidence and testimony that it was Creative Outdoor that wanted, and continually worked to retain, a relationship with QVC. The court views the parties' relationship as one of mutual benefits and finds no duress having been suffered by Creative Outdoor.

Furthermore, Creative Outdoor failed to demonstrate that it was without an immediate legal remedy as a viable alternative to executing the Promissory Note. As the purchase orders had not yet been finalized, Creative Outdoor could have walked away from the QVC deal as a first alternative. Furthermore, to the extent it now argues that it should not have been required to execute the Promissory Note in the first place because QVC failed to return goods as required and inflated the amount of any debt it owed, Creative Outdoor had knowledge of those alleged failures weeks before it executed the Promissory Note and could have taken legal action in that regard if it so desired. Finally, at trial, Creative Outdoor did not contend, let alone put forth evidence, that it was unable to consult with counsel prior to the Promissory Note's execution.

Alternatively, defendants argue that the contracts may be "avoided" because they were procured by fraud. Defendants argue that QVC's "misrepresentations" about the terms of the parties' agreements and defendants' reasonable reliance thereon, under the circumstances of duress, should relieve them of any liability. The court disagrees. Defendants failed to demonstrate that QVC made any misrepresentations or in any way failed to disclose material

-14-

information. Rather, the parties' agreements clearly set forth the responsibilities of defendants thereunder and defendants were under no obligation to agree to such terms.

The court, therefore, rejects Creative Outdoor's contentions that the Promissory Note is not a legally enforceable contract or should be voided.

### Horowitz breached his Contract, the Guaranty, with QVC.

The elements of proof required for QVC to be successful on its claim for breach of the Guaranty are the same as those noted above with regard to the Promissory Note. At trial, QVC provided credible evidence to satisfy each of the required elements and established its claim for breach of the Guaranty. Like Creative Outdoor, Horowitz does not dispute that he executed the Guaranty or failed to pay the sums due and owing under the Guaranty. Horowitz too challenges whether the Guaranty was a valid contract from the outset. Horowitz, however, waived any right to assert such a defense when he executed his absolute and unconditional Guaranty.

The Guaranty executed by Horowitz contains the following agreements relevant to the present dispute:

> 3. [Horowitz] irrevocably, unconditionally and absolutely guarantees to QVC and becomes surety for (a) the timely payment and remittance by [Creative Outdoor] of all sums when due under the Note; (b) the performance of all obligations of [Creative Outdoor] to QVC pursuant to the terms and conditions set forth in the Note; (c) the prompt and complete compliance and performance of all representations, warranties, covenants of [Creative Outdoor] as set forth in the Note (the aforesaid payment, remittance, compliance and performance obligations hereinabove guaranteed by [Horowitz] are hereinafter collectively referred to as the "Guaranteed Obligations").
>
> 5. The obligations of [Horowitz] under this Guaranty are primary, absolute, independent, irrevocable and unconditional and are so regardless of (a) the genuineness, validity or enforceability of the Note; (b) the validity, regularity, enforceability or legality of (i) any of the Guaranteed Obligations or (ii) any term of any document evidencing or relating to any of the Guaranteed

-15-

Obligations; and/or (c) any other circumstances, occurrence or conditions, whether similar or dissimilar to any of the foregoing, which might otherwise constitute a legal or equitable defense, discharge or release of a guarantor or surety.

(Ex. P-2, ¶ 3, 5).

The plain and unambiguous language of the Guaranty renders Horowitz's obligations under the Guaranty absolute and unconditional. Horowitz agreed that his obligations were absolute and unconditional regardless of whether the Promissory Note remained valid and enforceable or "any other circumstances, occurrence or conditions, whether similar or dissimilar to any of the foregoing, which might otherwise constitute a legal or equitable defense, discharge or release of a guarantor or surety." The parties could not have made it clearer that in executing the Guaranty Horowitz waived his right to challenge his obligation to pay and perform.

Furthermore, Horowitz at Paragraph 24 acknowledged that he fully understood the terms of the Guaranty and the rights he was waiving thereunder. At Paragraph 24, Horowitz agrees:

24. Guarantor declares that he has read and fully understands the terms of this Guaranty, has consulted with, or has had the opportunity to consult with his legal counsel regarding the terms hereof and that he voluntarily accepts the same of his own free will and without duress of any kind.

(Ex. P-2).

This provision also proves fatal to Horowitz's claim of economic duress, and the requirements that one show that he "involuntarily executed" a disputed agreement, regardless of his waiver of such a defense.

### QVC was damaged as a result of defendants' breaches of contract

The court, having determined that Creative Outdoor and Horowitz are each liable to QVC for their respective breaches of contract, turns to the issue of damages.

-16-

*Damages for Breach of the Promissory Note*

Pursuant to the Promissory Note, in the Event of Default, "[t]he entire outstanding and unpaid Principal Sum, together with any and all unpaid Late Charges and Collection Costs, shall be immediately due and payable, without need for notice or demand, at the sole option of QVC or any Holder, and shall immediately commence to accrue interest at the Default Rate . . . ." (Ex. P-1, ¶ 17). The Promissory Note further states:

> [Creative Outdoor] acknowledges and confirms that, as of October 5, 2015, it is indebted to QVC, without deduction, defense, setoff, recoupment, claim or counterclaim of any nature, in the aggregate principal amount of Five Hundred Forty-Five Thousand One Hundred Nine Dollars and Thirty-Four Cents ($545,109.34). So long as QVC is the holder of this Note, QVC's books and records shall be presumed to accurately evidence at all times all amounts outstanding under this Note.

(Ex. P-1).

As to late charges, the Promissory Note provides that:

> Without limitation of any of QVC's other remedies under this Note or applicable law, [Creative Outdoor] shall owe to QVC a late payment charge ('Late Charge') equal to five percent (5%) of the unpaid amount of any payment, whenever payment of the entire amount due is not received by QVC within five (5) Business Days (as defined below) after the date upon which such payment is due. Acceptance by QVC of a late payment shall not be deemed or considered an election of remedies or waiver by QVC of rights at law or in equity or under this Note.

(Ex. P-1, ¶ 13).

As to interest, following an Event of Default, the Promissory Note provides that all unpaid sums due and owing will thereafter accrue interest at the rate of fifteen percent (15%) *per annum.* (Ex. P-1, ¶ 10). Paragraph 23 of the Promissory Note provides that, following an Event of Default under the Promissory Note, QVC is entitled to payment by Creative Outdoor of any and all costs and expenses (including, but not limited to, reasonable attorneys' fees and expenses)

-17-

incurred or paid by Plaintiff in connection with the enforcement of the provisions of the Promissory Note or the collection of any and all sums due thereunder. (Ex. P-1, ¶ 23).

*Damages for Breach of the Guaranty*

Similar to the Promissory Note, the Guaranty provided for payment of the Guaranteed Obligations and interest, fees and costs upon an event of default. Paragraph 12 of the Guaranty provides that, following the occurrence of an Event of Default under the Promissory Note, all sums due to Plaintiff in connection with the Guaranteed Obligations shall bear interest calculated at the rate of fifteen percent (15%) *per annum*, defined to be the "Default Rate" under the Guaranty, until all sums due under the Guaranty are paid in full. (Ex. P-2, ¶ 12). Pursuant to paragraph 13 of the Guaranty, Plaintiff, in relevant part, is entitled, following the occurrence of an Event of Default under the Guaranty, to payment by Horowitz of any and all costs and expenses (including, but not limited to, reasonable attorneys' fees and expenses) incurred or paid by Plaintiff in connection with the enforcement of the provisions of the Guaranty or the collection of any and all sums due thereunder. (Ex. P-2, ¶ 13).

On the issue of damages, QVC presented the testimony of Glen Gershenson, QVC's Director of Treasury. According to Gershenson, whose testimony the court found credible, at present, $260,922.86 is due and owing to QVC. The amount includes the balance as of March 25, 2016, together with certain debits and credits that were applied to Creative Outdoor's vendor account after March 25, 2016 in accordance with the terms of the Initial Purchase Orders, the Subsequent Purchase Orders and the Promissory Note, plus the unpaid interest for late payments on the Promissory Note, as follows:

| Date(s) | Description | Amount |
|---|---|---|
| As of March 25, 2016 | Account Balance | $262,684.90 |

-18-

| Date(s) | Description | Amount |
|---------|-------------|--------|
| April 25, 2016 | Import Cost Repayments | ($428.49) |
| Mar. 27, 2015 and Mar. 30, 2015 | Customer Returned Merchandise sent back to Creative Outdoor | $3,168.76 |
| Mar. 31, 2015 | Release of Reserve on PO 839554 | ($8,398.01) |
| | Credit for Import Cost Repayment Rounding | ($104.30) |
| Sub-Total | | $257,027.16 |
| | Unpaid Interest on Late Promissory Note Payments | $4000.00 |
| **Total** | | **$260,922.86** |

(Exs. P-12-13).

As for Creative Outdoor's and Horowitz's "defenses" or challenges to QVC's damage number, the court, having concluded that the Promissory Note and Guaranty were valid and enforceable agreements, need not address each of the alleged challenges. They waived any right to do so under their agreements. At paragraph 8 of the Promissory Note, Creative Outdoor acknowledged that "as of October 5, 2015, it is indebted to QVC, without deduction, defense, setoff, recoupment, claim or counterclaim of any nature . . . So long as QVC is the holder of this Note, QVC's books and records shall be presumed to accurately evidence at all times all amounts outstanding under this Note." (Ex. P-1,¶ 8). The court already has addressed *supra* at pages 15 and 16, Horowitz's waiver of defenses contained in the Guaranty. Simply put, any attempts to reduce the amount owed based upon claims that either defendant is due credits from QVC is precluded by the terms of their own agreements.

Even if this were not the case, defendants failed to present any inventory records or the like which would demonstrate that the goods QVC states it returned were not in fact returned. First, at paragraph 8 of the Promissory Note, Creative Outdoor agreed that QVC's books and

-19-

records were accurate and not subject to challenge. Second, the court simply did not find credible the testimony of Horowitz on this subject. Despite claiming that his company was due tens of thousands of dollars in unreturned goods, Horowitz stated that the only action his company took in response was to snap a few photographs in September 2015. Nothing else was done until months later and then only after QVC declared an event of default.

In stark contrast, the court found the testimony of QVC's witnesses, Gershenson and Roger Nutt, QVC's Senior Manager – Inventory Liquidation, and the documentary evidence presented in connection with their testimony, to be credible and convincing. Each witness testified at length to the process and procedures by which QVC tracks and records monies due and owing to its vendors, including how such amounts are credited or debited to vendor accounts (Gershenson) and how returned goods are carefully tracked and delivered to vendors such as Creative Outdoor (Nutt). The court, thus, rejects any defense by Creative Outdoor or Horowitz that the damage numbers presented by QVC are inaccurate or unreliable.

*Attorneys' fees and costs under the Promissory Note and Guaranty*

Both the Promissory Note and the Guaranty obligated defendants to pay QVC all costs and expenses, including attorneys' fees, it incurred in the collection and enforcement of the defendants' obligations under their respective agreements. Creative Outdoor at Paragraph 23 of the Promissory Note agreed as follows:

> 23. Following the occurrence of an Event of Default, Maker hereby agrees to pay any and all costs and expenses (including, but not limited to, reasonable attorneys' fees and expenses) incurred or paid by QVC . . . in connection with the collection or enforcement of this Note.

(Ex. P-1).

Horowitz likewise agreed at Paragraph 13 as follows:

-20-

13. Following the occurrence of an Event of Default under this Guaranty, Guarantor hereby agrees to pay any and all costs and expenses (including, but not limited to, reasonable attorneys' fees and expenses) incurred or paid by QVC . . . in connection with the collection or enforcement of this Guaranty.

(Ex. P-2).

The court having found an event of default to have occurred under both the Promissory Note and Guaranty, also finds that QVC is entitled to recover its reasonable attorneys' fees and costs incurred in connection with its enforcement of the defendants' obligations.

**QVC did not breach its contract with Creative Outdoor (Purchase Order 853360)**

Creative Outdoor asserts its own claim for breach of contract against QVC stemming from QVC's cancellation of a purchase order (Purchase Order 8533360) dated October 2, 2015, which QVC contends was a cancelable order. Defendants contend that PO 853360 was cryptically coded as "Product Type: ACO" and that QVC never mentioned or discussed with them that PO 853360 was an adjustable/cancelable PO prior to expressing its intent to cancel the purchase order. The court agrees that QVC was within its contractual rights to exercise its option to cancel this particular order.

Whether such a conversation took place or not does not alter the express terms of the purchase order, by which Creative Outdoor is still bound. PO 853360 states that it "IS AN ADJUSTABLE/CANCELABLE PURCHASE ORDER. DO NOT SHIP UNTIL YOU SPEAK TO YOUR BUYER." (Ex. P-17). As the Pennsylvania Supreme Court has held, "[c]ontracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains." *See Simeone v. Simeone*, 525 Pa. 392, 400, 581 A.2d 162, 165-66 (1990); *see*

-21-

*also Montgomery v. Levy,* 406 Pa. 547, 550, 177 A.2d 448, 450 (Pa. 1962) (holding that a contracting party is legally bound to know the terms of the contract entered).

Regardless, the court finds credible the testimony of QVC's witnesses, Jenne Frackleton and Robert Ohrn, that the terms of PO 853360, and their meaning, were in fact discussed with Creative Outdoor prior to the issuance of the purchase order. As testified to at trial, on or about January 20, 2016, Ms. Frackelton, QVC's buyer who handled Creative Outdoor's products at that time, notified Creative Outdoor that QVC would cancel PO 853360 if the folding wagons which were to be aired on QVC's direct response television programming in February 2016 did not meet sales expectations. She reiterated therein that "PO [853360] has always been written as an ACO (adjustable / cancelable order)." (Ex. P-23). QVC aired the folding wagons on February 2, 2016. Sales did not meet expectations, and on February 3, 2016, QVC, as agreed to, canceled PO 853360. (Ex. P-24).

### QVC did not breach the Promissory Note or Guaranty

According to defendants, QVC breached the Promissory Note by: (1) cancelling Purchase Order 853360 and (2) failing to timely issue letters of credit. Specifically, it claims that the Promissory Note "provides for the repayment of the debt, in large part, through the application of credits to be obtained through future purchases by QVC from COD." Thus, according to Creative Outdoor, the cancellation of Purchase Order 853360 was improper and credits required under the Promissory Note were not applied – actions which occurred before the event of default. In other words, Creative Outdoor alleges that QVC breached its duty of good faith and fair dealing first. The court concludes that QVC did not breach the Promissory Note.

The court agrees with QVC that neither the Promissory Note nor the Guaranty impose any duties or obligations upon QVC. Rather, the Promissory Note is merely a written

-22-

acknowledgment of the debt owed by Creative Outdoor to QVC, and the means by which Creative Outdoor will pay that balance due. (Ex. P-1, ¶ 8). QVC did not execute either the Promissory Note or the Guaranty. The Promissory Note did not guarantee that Creative Outdoor could pay the Principal Sum through a price reduction on any of the purchase orders. (Ex. P-1, ¶ 11). Rather, to the extent that amounts were owed to Creative Outdoor under the purchase orders, QVC would deduct a percentage of those amounts and apply them to the Principal Sum. (Ex. P-1, ¶ 11). Because the Promissory Note and Guaranty did not impose any obligations on QVC, QVC did not breach either the Promissory Note or Guaranty by canceling the purchase orders or by failing to issue the letters of credit timely or otherwise.

As for the letters of credit, the Promissory Note at Paragraph 6 states that the "terms of each of the Purchase Orders . . . *contemplate* that QVC will cause to be issued a letter of credit", but its express terms do not obligate QVC to do so. Neither the Promissory Note, nor the purchase orders themselves, impose a deadline by which QVC must issue a letter of credit. Therefore, while defendants complain about QVC's "delay" in issuing the letter of credit for PO 850767, they can point to no obligation on QVC's part to issue the letter of credit by a specific time and so any breach of contract claim fails.

Furthermore, any issuance of a letter of credit was "subject to the other terms and conditions of the purchase orders." In paragraph 7, following immediately thereafter, Creative Outdoor again acknowledged that it "accepted, and accepts, the terms and conditions of the Purchase Orders without modification thereof." (Ex. P-1, ¶ 7).

As demonstrated at trial, one such express term of PO 853360 was that it was an "ADJUSTABLE/CANCELABLE ORDER." (Ex. P- 17). Likewise, the express terms of POs 848991 and 850410 are that the orders were "CONDITIONALLY ISSUED PENDING QVC

-23-

APPROVAL OF FIRST-PIECE QA SAMPLE. ABSENT SUCH APPROVAL, VENDOR IS SOLELY RESPONSIBLE FOR ANY ACTION TAKEN OR NOT TAKEN BY VENDOR IN RELIANCE ON THIS ORDER." (Ex. P-14, 15). Defendants simply did not put forth credible evidence that the purchase orders were more than conditionally issued or mandated the issuance of any letters of credit.

### Creative Outdoor failed to prove that QVC interfered with its business relationships.

According to Creative Outdoor, in March of 2016, QVC added additional pressure to Creative Outdoor by disrupting business that it had started in early 2015 with QVC affiliates in Europe. It contends that QVC attempted to persuade its European affiliates not to do business with Creative Outdoor because of its existing debt.

At trial, Creative Outdoor attempted to introduce into evidence during its direct examination of Horowitz a document which it proffered would assist in establishing its claim for intentional interference with contractual relations. The admission of the document was objected to by QVC on the ground that it was a hearsay document without an exception. Following argument by the parties on the admissibility of the document, the court ruled that the document was inadmissible. No other evidence was offered at trial on this claim.

Counsel for Creative Outdoor advised that court that without the introduction of the inadmissible document Creative Outdoor's claim fails. The court agrees.

### CONCLUSIONS OF LAW

1.      The Promissory Note executed by Creative Outdoor is a valid and enforceable statement of an acknowledged and preexisting debt owed by Creative Outdoor to QVC.

2.      The Guaranty executed by Horowitz is a valid and enforceable agreement.

-24-

3. Creative Outdoor breached the Promissory Note by failing to make payments as required under its terms.

4. Horowitz breached the Guaranty by failing to pay QVC the amounts due when Creative Outdoor breached the Promissory Note and failed to do so.

5. As a result of Creative Outdoor's breach of the Promissory Note, and Horowitz's breach of the Guaranty, QVC has sustained damages in the amount of the Principal Sum, less all payments made by and credits due to Creative Outdoor, plus unpaid Late Charges, which sum totals $260,922.86.

6. QVC is entitled to interest on the amounts due, calculated from the date of the Event of Default using the Default Rate – defined by the Promissory Note as 15% per annum.

7. QVC is entitled to all costs and expenses (including but not limited to reasonable attorneys' fees and expenses) incurred or paid by QVC in connection with the collection or enforcement of the Promissory Note.

8. QVC is entitled to all costs and expenses (including but not limited to reasonable attorneys' fees and expenses) incurred or paid by QVC in connection with the collection or enforcement of the Guaranty.

9. There is no merit to defendants' assertion that QVC miscalculated the value of the returned goods when calculating the credit due to QVC for the returned goods.

10. There is no merit to defendants' assertion that QVC did not return the number of units of Sale or Return Merchandise for which it charged Creative Outdoor.

11. The Court rejects defendants' challenges with respect to the amount of QVC's damages.

-25-

12. Purchase Order 853360, by its express terms is an adjustable/cancelable purchase order.

13. QVC did not breach Purchase Order 853360.

14. QVC did not execute the Promissory Note or the Guaranty.

15. Neither the Promissory Note nor the Guaranty imposes any duties or obligations upon QVC.

16. QVC did not breach the Guaranty.

17. Defendants failed to establish a claim for intentional interference with contractual relations.

An appropriate Order follows.


Date: September 6, 2018          BY THE COURT:


_____
Mark L. Tunnell,    J.



**Type:** DECISION BY THE HONORABLE

**Case Number:** 2016-01727-MJ

**Case Title:** QVC INC VS. CREATIVE OUTDOOR DISTRIBUTORS USA INC
ET AL

So Ordered

*/s/ Mark Tunnell*

Electronically signed on 2018-09-06 12:53:38    page 27 of 27